**Thompson Olu ADEBISI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 91–4305**

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Feb. 7, 1992.

Thompson Olu Adebisi, pro se.

Richard Thornburgh, Atty. Gen., Dept. of Justice, David V. Bernal, Acting Asst. Director, Mark C. Walters, Asst. Director, Alice M. King, David M. McConnell, Attys., Robert L. Bombough, Director, Office of Immigration Litigation, Civ. Div., Washington, D.C., for respondent.

E.M. Trominski, Acting Dist. Director, INS, Harlingen, Tex., John Caplinger, Dist. Director, INS, New Orleans, La., for other interested parties.

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

## I

Thompson Olu Adebisi admits that he entered this country illegally. He seeks, alternatively, asylum or withholding of deportation. He appeals an order of the Board of Immigration Appeals which denied both and further ordered deportation. For the reasons set out below, we affirm the order of the Board.

Adebisi is a native of the town of Arigidi, Nigeria, and is a Nigerian citizen. He is a member of the Yoruba tribe and is the hereditary chief of the Esubete, a "social group" (or sub-tribe) comprising all males 25 years of age or older in Arigidi. He indicates that membership in the Esubete is voluntary, yet says that all the Arigidi males belong. Both his father and a brother have been murdered by a faction of the Esubete that was opposed to his grandfather, who ruled the Esubete in a dictatorial fashion. Following his father's death, Adebisi refused to be inaugurated as chief of the Esubete because he was afraid this same faction would ultimately kill him. Although his story is unclear on this point, it seems that he cannot simply decline the position, but must submit to some ritual involving the elders of the Esubete (a ritual that he also called a "trial," or "sacrifice"). He contends that if he submits to this ritual, the elders will have power over him and can kill him by voodoo.[1] Adebisi seems to expect this curse as retaliation for his refusal of the hereditary chieftainship. He also seems to say that the elders have harassed him by means of voodoo. He states that if he should show up for the ritual, he will be exposed to violence from the faction that has already killed his father and brother. Finally, he contends that the government of Nigeria will not become involved in this matter because it is a tribal matter.[2] He admits that he has never sought police or other governmental help, but says that he cannot do so because of "the implication of reporting my threats to the government. ... I know what it means when it comes to 'voodoo,' it has invisible power." He says one of the elders "has threatened me that if I do it [report the matter to the police] ... I know how powerful this charm is. If the curse is put on you and you do anything ... something you should not do ... (indiscernible) will surely come to pass." Adebisi's testimony is that the Esubete elders have threatened him with a curse or death if he goes to the police and he is afraid to do so.

Adebisi testified that after his father's death, in an effort to avoid the elders, he returned to his job in Lagos. After being found and harassed there, he left his wife and children and fled to the north of Nigeria in an effort to hide from the elders. He was not successful, and when found there, he decided to flee the country. He obtained a visa and flew to Mexico in July 1990. From Mexico, he entered the United States on August 6, 1990.

## II

Adebisi was apprehended after entering this country from Mexico without inspection in violation of Section 241(a)(2) of the Immigration and Nationality Act (the I & N Act), 8 U.S.C. § 1251(a)(2). Adebisi admits that he entered the United States without inspection and is subject to deportation under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2). He applied for asylum and for withholding of deportation under sections 208(a) and 243(h) of the Act, 8 U.S.C. §§ 1158(a), 1253(h).

A hearing was held before an immigration judge on November 26, 1990. The judge found that Adebisi was a credible witness; that Adebisi's fear of being put to death by the elders of the Esubete if he returned to Nigeria was "real"; and that

---

1. As he puts it, the elders can say, "Thompson, be a dead person," and he will die.

2. Adebisi cites only one incident, which involved a late night disturbance of the peace, as support for this claim. The disturbance was reported to the police the following day and they refused to act. The immigration judge found this unconvincing as support for Adebisi's belief that the police would not act on the death threat against him.

he was threatened because of his membership in a social group, i.e., the royal family of the Esubete. The immigration judge held, however, that Adebisi was not eligible for asylum because he did not establish that the Esubete were a group that the government of Nigeria was unable or unwilling to control. The judge found that Adebisi had "a personal problem, even though ... it is not personal within your immediate family." In her oral opinion, she stated, "[i]t is required that you demonstrate that the persecution against you is aimed against you either by your government or by an organization that the government is unwilling or unable to control. ... I simply find that you are not eligible for asylum because your fear that [sic] your own tribe, in which you joined and participated voluntarily, is simply not enough to qualify you for asylum, because this is truly a personal and private dispute." The immigration judge denied asylum, denied withholding of deportation and ordered Adebisi deported to Nigeria.

Adebisi appealed the immigration judge's order. On March 27, 1991, the Board of Immigration Appeals affirmed the order, in the following language pertinent to this appeal:

> [W]e concur with the judge, *for the reasons set forth in her decision,* that [Adebisi] has failed to establish a well-founded fear or clear probability of persecution in Nigeria on account of his membership in a particular social group. [citations omitted]. Rather, the persecution the respondent fears is on account of a personal dispute, namely intra-tribal discord over the respondent's unwillingness to succeed his father as chief. ... The respondent has made no showing that the government of Nigeria is unable or unwilling to protect him from ... the factions in his tribe.

*In re Adebisi,* slip op. at 2 (Board of Immigration Appeals, March 27, 1991) (emphasis ours). In appealing the decision of the Board of Immigration Appeals, Adebisi contends that he was prejudiced by lack of counsel, lack of communication and by a "biased judge." He further argues that the Board erred in failing to grant asylum, in failing to withhold deportation, and in denying voluntary departure.

## III

This court is authorized to review only the order of the Board. *Castillo–Rodriguez v. I.N.S.,* 929 F.2d 181, 183 (5th Cir. 1991). Consequently, the errors or other failings of the immigration judge are considered only if they have some effect on the Board's order. Moreover, "[w]e review the BIA's factual conclusion that an alien is not eligible for withholding of deportation only to determine whether it is supported by substantial evidence." *Zamora–Morel v. I.N.S.,* 905 F.2d 833, 838 (5th Cir.1990) (citing *Young v. I.N.S.,* 759 F.2d 450, 455–56 n. 6 (5th Cir.), *cert. denied,* 474 U.S. 996, 106 S.Ct. 412, 88 L.Ed.2d 362 (1985)). The same substantial evidence standard governs our review of the BIA's factual conclusion that an alien is not eligible for consideration for asylum. *See Campos–Guardado v. I.N.S.,* 809 F.2d 285, 290 ("[w]e conclude the Board's denial of the withholding claim is supported by substantial evidence, *as is its determination that Ms. Campos is statutorily ineligible for a discretionary grant of asylum.*") (Emphasis added). [Additional citation omitted]. The Attorney General's ultimate decision whether to grant or deny a refugee asylum, [if eligibility is established,] must be upheld 'absent a showing that such action was arbitrary, capricious or an abuse of discretion.' *Young v. I.N.S.,* 759 [F.2d] at 455 n. 6." *Zamora–Morel,* 905 F.2d at 838.

■ To establish eligibility for asylum (the granting of which is within the Attorney General's discretion), the alien must show 1) that he has a "well-founded fear of persecution in his country of nationality ... on account of race, religion, nationality, membership in a particular social group, or political opinion, ... 2) that there is a reasonable possibility of actually suffering such persecution if he were to return to that country, and ... 3) that he is unable or unwilling to return to or avail himself of the protection of that country because of

such fear." 8 C.F.R. § 208.13(1), (2). An application for asylum is also treated as a request for withholding of deportation. 8 C.F.R. § 208.3(b); *Castillo–Rodriguez v. I.N.S.*, 929 F.2d 181, 185 (5th Cir.1991). "The showing required to prove a clear probability of persecution [to establish eligibility for withholding of deportation] is more stringent than that required to prove a well-founded fear of persecution under the asylum remedy." *Castillo–Rodriguez*, 929 F.2d at 185 (citing *I.N.S. v. Cardozo-Fonseca*, 480 U.S. 421, 449–50, 107 S.Ct. 1207, 1222–23, 94 L.Ed.2d 434 (1987)).

■ "The law regulating persecution claims, although humane in concept, is not generous." *Coriolan v. I.N.S.*, 559 F.2d 993, 996 (5th Cir.1977). Adebisi's testimony clearly reveals a pattern of violence against *his family* by a faction within the Esubete.[3] Furthermore, the immigration judge found that Adebisi feared persecution because of his membership in "a particular social group"—the royal family of the Esubete.[4] Both the immigration judge and the Board found, however, that Adebisi's fear of persecution was "on account of a personal dispute." We agree with this conclusion.

We think, however, that Adebisi's fear of persecution (voodoo curse and death threats) was not "on account of membership in a particular social group," but instead "on account of" his particular activities or lack thereof as related to that social group. Even if the term "social group" is understood to apply to a limited group such as the Esubete royal family, it remains clear that Adebisi is being threatened because he refuses to accept a position of leadership, not "on account of" his membership in the royal family. Indeed, the Board states "the persecution the respondent fears is on account of ... intra-tribal discord over the respondent's unwillingness to succeed his father as chief." *In re Adebisi*, slip op. at 2 (Board of Immigration Appeals, March 27, 1991). Thus, we agree that Adebisi cannot be considered for asylum or withholding of deportation because the persecution he fears arises from a "personal dispute" between him and a faction of the Esubete tribe.

Moreover, this circuit has repeatedly held that "persecution within the context of the INS regulations relates to persecution by "authorities,[5]" "supporters of the ... regime,[6]" "the military,[7]" or "the government[8]" unless "political conditions [in the

---

3. We also note that letters from Adebisi's friend, Debo Ologundude, and his brother, Nuji Adebisi, while not clearly showing a pattern of persecution, can be read as supporting that view. Ologundude's letter indicates the whereabouts of Adebisi's wife and children is unknown. Nuji Adebisi's letter indicates that a death threat was made against their uncle by the Esubete elders to try to force him to give them Adebisi's location.

4. The immigration judge, in her oral opinion stated, "[t]here is no doubt, particularly in a situation like yours, that the family relationship that is kinship, can constitute membership in a particular social group." Administrative Record at p. 76.

5. *Bahramnia v. I.N.S.*, 782 F.2d 1243, 1248 (5th Cir.1986). The court stated that appellant had not identified as an opponent by his home country's *"authorities" or "regime." Id. The court affirmed the Board's decision denying Bahramnia's motion to reopen the Board's decision to deport him.*

6. *Id.* "No evidence was submitted to suggest that *supporters of the ... regime* have taken

action against him ... or any of his family members." *Id.*

7. *Guevara Flores v. I.N.S.*, 786 F.2d 1242, 1250 (5th Cir.1986). "The head of the ... *military* has personally taken an interest in her case. ... [T]he *authorities* expressed an interest in obtaining the date and number of [her] flight." *Id.* The court held that Guevara was entitled to reopen her case before the immigration judge. *Id.* at 1251.

8. *Young v. I.N.S.*, 759 F.2d 450, 456 (5th Cir. 1985). Appellant "failed to adduce convincing positive evidence that these events either were sponsored by *the government* or were in retaliation." *Id.* The court affirmed the Board's order denying asylum and refused to order the case reopened even though the appellant presented evidence that he had been fired from his job because of his son's political activity, he had been unable to find other employment and the Guatemalan secret police had detained his daughter and questioned her as to his whereabouts. *Id.* at 452, 456–57.

alien's country of origin] are so specially oppressive that a wider range of claims of persecution must be given credence.[9] The evidence in the record supports the Board's finding that the "persecution" feared by Adebisi does not arise from activities instigated or sanctioned by the Nigerian "government," "authorities," "military," or "supporters of the [ ] regime."

It is true, of course, that the BIA extends the qualifying range of persecution fear to include acts by groups "the government is unable or unwilling to control." It found in this case, however, that the Esubete elders were not such a group. *In re Adebisi*, slip op. at 2 (Board of Immigration Appeals, March 27, 1991). Although the evidence shows that Adebisi is unwilling to seek the protection of the Nigerian government, he is unwilling because of his fear of the Esubete elders and their voodoo powers, not because of "specially oppressive" political or governmental conditions that would justify broader than normal consideration. *Coriolan*, 559 F.2d at 1003. We therefore hold that Adebisi has failed to establish a "well-founded fear of persecution" that is of the character that would entitle him to consideration for asylum. It necessarily follows that he has failed to make the more stringent showing necessary to justify withholding of deportation. *Castillo–Rodriguez*, 929 F.2d at 185.[10]

The order of the Board of Immigration Appeals affirming the order of the immigration judge denying asylum or withholding of deportation, and denying voluntary departure is

AFFIRMED.

---

9. *Coriolan v. I.N.S.*, 559 F.2d 993, 1003 (5th Cir.1977). The court ordered the appellants' deportation and asylum hearings reopened to consider evidence of the "specially oppressive" "Haitian political conditions" relying on an Amnesty International report that concluded, in part, "that the term 'political prisoners' has to be interpreted in the widest possible sense in the Haitian context. ... [A] large number are imprisoned indiscriminately." *Id.* at 1002.

10. We have carefully considered Adebisi's allegations that he was prejudiced by lack of counsel. The Board found that Adebisi was given "numerous opportunities to obtain counsel" and that his "waiver of his right to representation at no expense to the government was ... knowing and intelligent." *In re Adebisi*, slip op. at 1

(Board of Immigration Appeals, March 27, 1991). This finding is supported by substantial evidence and we will uphold it. As to Adebisi's claims that he suffered from lack of communication and a biased judge, we simply find no merit to them. Our review of the record reveals that, in spite of numerous "indiscernible" statements in the transcripts, the immigration judge made a searching and wide-ranging inquiry of Adebisi and allowed him plentiful opportunities to elaborate on his answers to her questions and to make comments of his own. In addition, the immigration judge went to some lengths to assure fair treatment for Mr. Adebisi and stated that she was sympathetic to him. We find no support for either "lack of communication" or a "biased judge."