**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 00-60232

(Summary Calendar)

_____

SIRAJ P. JASANI; CLARA G. MENDES,

Petitioners,

versus

JANET RENO, Attorney General,

Respondent.

_____

Appeal from the United States District Court
For the Northern District of Texas, Abilene
A73 610 692

_____

January 17, 2001

Before EMILIO M. GARZA, STEWART and PARKER, Circuit Judges.

PER CURIAM:[*]

Siraj P. Jasani and Clara G. Mendes (collectively "Petitioners") appeal the Board of

Immigration's ("BIA") dismissal of their motion to reopen deportation proceedings. We affirm.

_____

[*] Pursuant to Fifth Circuit Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

Jasani, a 36-year-old Muslim male, and Mendes, a 35-year-old Catholic female, met in their native India and became romantically involved. Their families, however, disapproved of their interfaith relationship. Under Islamic law, Mendes would have to convert to Islam in order to marry Jasani. Despite heavy pressure from Jasani's family, Mendes refused to convert, earning their ire. Likewise, Mendes' brother warned her that he would not assist her if she married a Muslim.

The couple also faced intolerance beyond their families. Jasani, for example, believes that extremist groups were responsible for a bomb explosion of his tape store. In addition, both Jasani and Mendes allege that the local police previously questioned them due to their religious backgrounds, and issued outstanding arrest warrants against them. Mendes claims that she faced further harassment from local authorities because of her political activism: she had worked on behalf of the Shrudas, the low-caste "untouchables" in her community.

As a result of this religious and political intolerance, Jasani and Mendes left India and eventually entered the United States, where they were married. Jasani and Mendes individually filed affirmative applications for asylum, but the Immigration and Naturalization Service ("INS") rejected their requests. Instead, the INS referred them to Immigration Court in Houston. During deportation proceedings commenced on February 1996, Jasani and Mendes conceded deportability under 8 U.S.C. § 1251(a)(1)(A) (excludable at entry) and 8 U.S.C. § 1251(a)(1)(B) (being in the United States in violation of law), respectively. They, however, requested asylum and withholding of deportation.

The Immigration Judge denied their requests and found that the Petitioners did not have any reasonable fear of persecution. He noted that the couple failed to provide evidence of past or future persecution by the government or some other group that the government was unable or unwilling to

control.  The Petitioners filed an appeal to the BIA, which denied it on August 23, 1999.  The Petitioners filed a motion to reopen with the BIA on November 18, 1999.  They attached several journalistic and scholarly reports on human rights abuses, as well as two affidavits from their mothers discussing the arrest warrants allegedly issued to the Petitioners.  The BIA denied the motion on February 28, 2000.  Jasani and Mendes then filed the instant petition to this court.

The sole issue properly presented on appeal is whether the BIA erred in denying the Petitioners' motion to reopen.  We review the denial of a motion to reopen for abuse of discretion.  *See Osuchukwu v. INS*, 744 F.2d 1136 (5th Cir. 1984); *see also* 8 C.F.R. § 3.2(a) ("The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board.")

We hold that the BIA did not abuse its discretion in refusing to reopen the deportation proceedings.  The BIA cannot reopen matters "unless it appears…that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing."  8 C.F.R. §3.2(c)(1).  And even if the Petitioners meet this threshold requirement, the BIA still has discretion whether or not to grant the motion to reopen.  *See INS v. Abudu*, 485 U.S. 94, 105 (1988) ("[C.F.R. § 3.2] does not affirmatively require the Board to reopen the proceedings under any particular condition.  Thus, the regulations may be construed to provide the Board with discretion") (citations omitted).

In their motion to reopen, the Petitioners offered two sets of evidence: (1) two affidavits from their mothers detailing the arrest warrants issued to the Petitioners; and (2) recent reports about human rights conditions in India.

In regards to the affidavits, the BIA properly refused to consider them because the Petitioners had failed to introduce them at the prior hearing.  The Petitioners offer three arguments to justify their

failure to submit the affidavits timely. First, the Petitioners claim that the BIA has the power to accept new evidence, and that it abused its discretion in not accepting the affidavits when it considered the motion to reopen. While the BIA can accept new evidence during appeal, that authority is limited to evidence previously unavailable or undiscoverable. *See* 8 C.F.R. §3.2(c)(1). The Petitioners have failed to meet this requirement. The affidavits likely could have been obtained earlier, especially since they are from the Petitioners' mothers.

Second, they argue that the affidavits "clearly could not have been presented at the 'former hearing' before the Immigration Judge, because they did not *exist* at that time" (emphasis in original). Again, this argument misconstrues 8 C.F.R. § 3.2(c)(1), which does not require the evidence to have literally existed at the time of the prior proceeding. It only requires that the evidence could have been "discovered or presented at the former hearing." *Id.*

Third, the Petitioners maintain that they did not produce these affidavits earlier because they could not have reasonably anticipated that the Immigration Judge would want more evidence. This argument misses the point. The Petitioners had the opportunity to produce these affidavits at the prior hearing, but decided not to do so. Indeed, the Petitioners should have realized that these affidavits regarding arrest warrants would have strengthened their case. During the original hearing, the Petitioners offered scant details about the arrest warrants, although they were crucial in showing future persecution. The Petitioners admitted that they never saw the arrest warrants, and that their knowledge of them stems solely from their mothers' recollection that police officers presented arrest warrants to them.[1]

---

[1] Even if the affidavits were considered, they likely would not have affected the BIA's decision. The affidavits do not state why the police had issued these arrest warrants and on what grounds. They merely state that the Petitioners' mothers were accosted by police officers bearing

The BIA considered the petitioners' second set of evidence—recent government and journalistic reports of human rights violations in India))but held that they were insufficient to warrant a reopening of the matter. We note that there is "no statutory provision for reopening of a deportation proceeding, and the authority for such motions derives solely from regulations promulgated by the Attorney General. . . . The granting of a motion to reopen is thus discretionary." *INS v. Doherty*, 502 U.S. 314, 322 (1992). The BIA held that the Petitioners failed to meet the "heavy burden" of "present[ing] evidence of such a nature that the Board is satisfied that if the proceedings before the immigration judge were reopened...the new evidence offered would likely change the result in the case." *Matter of Coelho*, 20 I.&N. Dec. 464, 473 (BIA 1992).

The BIA did not abuse its discretion in finding that the newly submitted government and journalistic reports would not have affected its prior decision. *See Abudu*, 485 U.S. at 105 (establishing an abuse of discretion standard for motions to reopen involving discretionary relief like asylum). First, many of the reports submitted are not relevant as they involve Muslim-Hindu relations. Second, even the relevant reports do not shed much light on the Petitioners' specific claims of religious and political persecution. For example, the Petitioners still do not adequately explain if the arrest warrants were issued because of political or religious animus against the Petitioners. Jasani also fails to add details about the bomb explosion of his store; we still do not know who was responsible for it. Third, some of the reports actually undermine the Petitioners' claims. The State Department Report notes that while some extremist groups have increased attacks against religious minorities, the Indian "Constitution provides for freedom of religion, and the Government respects this right in practice." *See also Sotelo-Aquije v. Slattery*, 17 F.3d 33 (2nd Cir. 1994) (holding that

arrest warrants.

persecution claims only involve conduct by government forces or "nongovernmental groups that the government cannot control.")

The Supreme Court has held that "[m]otions for reopening the immigration proceedings are disfavored for the same reasons as are the petitions for rehearing and motions for a new trial on the basis of newly discovered evidence. . . . This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *Doherty*, 502 U.S. at 323. In light of our stringent standard of review, we cannot say that the BIA's denial of the motion to reopen was "capricious, racially invidious, utterly without foundation in the evidence, or otherwise so aberrational that it is arbitrary rather than the result of any perceptible rational approach." *Osuchukwu*, 744 F.2d at 1142 (holding that the BIA did not abuse its discretion in denying request to reopen deportation proceeding).

Petitioners also seek judicial review of the underlying deportation order issued on August 23, 1999. This asylum claim, however, was not properly presented to this court as the Petitioners filed for review on March 27, 2000)) after the 30-day period required by Section 106(a) of the Immigration and Naturalization Act had lapsed. In *Stone v. INS*, 514 U.S. 386 (1995), the Supreme Court held that the filing of a motion to reopen did not toll the time period for filing a judicial review of the underlying deportation order. Thus, the Supreme Court held that the Court of Appeals correctly refused to hear the untimely underlying asylum claim. The Petitioners claim that *Stone* should not apply here because recent statutory amendments to the Immigration and Naturalization Act (such as reducing the time period to file petitions) have alleviated the *Stone* court's concern about abusive delay. Although the Supreme Court obviously worried about potential abusive delay, it based its decision in *Stone* in large part on statutory language and construction. *See*

*id.* at 393.  The Petitioners have not offered any argument to rebut the Supreme Court's reasoning in *Stone* about statutory construction.

Assuming *arguendo* that the BIA erred in not considering the underlying asylum claim, we believe that substantial evidence likely supports the immigration judge's factual findings.  *See Mikhael v. INS*, 115 F.3d 299 (5th Cir. 1997) (Court of Appeals will reverse the BIA's factual findings only when evidence is so compelling that no reasonable fact-finder could fail to find the fear of persecution).  The vague allegations of harassment and mistreatment described in the Petitioners' briefs, while deplorable and reprehensible, do not rise up to the level of persecution.  For example, family disapproval of their interfaith marriage does not support a persecution claim.  *Cf. Adebisi v. INS*, 952 F.2d 910 (5th Cir. 1992) (holding that voodoo threats by elders of tribe did not constitute religious persecution but rather represented a personal dispute).  And as mentioned previously, the Petitioners fail to show that harassment by local authorities and by local residents was based on religious or political grounds.  *See Matter of H-M, et al.*, 20 I.&N. Dec. 683 (BIA 1993) (holding that it is not persecution if an asylum applicant faces punishment for actions  based on criminal activities as opposed to political or religious beliefs).

AFFIRMED.