**Yaroslav SEMENOV, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

**Nos. 07–3178, 07–4047.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Sept. 22, 2009.

Filed: Sept. 28, 2009.

Vlad Kuzmin, Kuzmin & Associates, New York, NY, for Petitioner.

Richard M. Evans, Sada Manickam, Nancy E. Friedman, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: BARRY, FISHER and JORDAN, Circuit Judges.

## OPINION OF THE COURT

FISHER, Circuit Judge.

Yaroslav Anatolyevich Semenov, a citizen of Tajikistan, petitions this Court for review of final orders issued by the Board of Immigration Appeals ("BIA"). For the reasons that follow, we will grant the petition and remand this matter to the BIA.[1]

## I. Facts

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Semenov was born in Tajikistan in 1981. In 1997, Semenov, his father and four siblings fled that country and were admitted to the United States as refugees after their arrival in New York.[2] In 2001, Semenov became a lawful permanent resident of the United States.

In July 2006, the Department of Homeland Security ("DHS") served Semenov with a Notice to Appear in Immigration Court in York, Pennsylvania, charging that he was subject to removal under INA § 237(a)(2)(A)(ii) based on two petit larceny convictions in 2004. In August 2006, DHS added an additional charge of removability under INA § 237(a)(2)(A)(iii) based on a June 2006 attempted second-degree burglary conviction.

On February 26, 2007, Semenov appeared at a hearing before an Immigration Judge ("IJ") and requested withholding of removal under the Convention Against Torture ("CAT"). Semenov testified, among other things, that he feared returning to Tajikistan because, according to him, the authorities there would imprison, torture and possibly kill him. Semenov also called as an expert witness Dr. John Schoeberlein, Director of the Program on Central Asia and the Caucasus at Harvard University, who testified by telephone. On direct examination, Schoeberlein testified, in pertinent part, as follows:

[Semenov's attorney]: Someone in Mr. Semenov's circumstances, how likely is he to be subjected to torture or persecution in Tajikistan?

[Schoeberlein]: My (indiscernible) that he would be quite likely (indiscernible) 50 percent (indiscernible) that he would be (indiscernible) as a known

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder Jr. is automatically substituted for former Attorney General Michael B. Mukasey as the respondent in this case.

2. Semenov's mother was killed in Russia in 1995.

convicted felon. He would be (indiscernible) authorities in Tajikistan (indiscernible) established record of use of torture in various contexts by authorities in Tajikistan. And because he would be considered an undesirable citizen in that country (indiscernible) also the fact that he's of Jewish background, certainly a factor her [sic]. And (indiscernible) from United States [sic] where, which would (indiscernible) undoubtedly (indiscernible) country. I think (indiscernible) a significant chance of torture.

[Semenov's attorney]: Which people would be considered undesirable by the government in Tajikistan?

[Schoeberlein]: Well, the fact that he is being return [sic] because he's a convicted criminal. The most important (indiscernible) that there is, as I mentioned, (indiscernible) country and (indiscernible) some part of people who have dealing [sic] with the authorities (indiscernible) as well. So those are the (indiscernible) certainly work against him.

[Semenov's attorney]: What do you think, what is your expertise or knowledge about people who are detained in Tajikistan jails? What happens to them?

[Schoeberlein]: Well, first of all (indiscernible) country, the country itself is a poor country and they don't consider (indiscernible) resources to the jails. So anyone who (indiscernible) certain risk of (indiscernible) treatment. But in addition to that there is a problem of (indiscernible) beating and tortures [sic] in relation to people who are in jail there. And (indiscernible) well-documented problem by international human rights groups.

. . . .

[Semenov's attorney]: What do you expect will happen to Mr. Semenov when he is deported to Tajikistan, in your experience?

[Schoeberlein]: Well, because he's being deported as a convicted felon, I'm sure he will be passed over to the authorities at that time. What happens t[sic] him it's very difficult to stay [sic]. But (indiscernible) hands of authorities has put him at a certain risk (indiscernible) a risk of him being torture [sic]. The (indiscernible) not want him to release him [sic] to the public because he's seen as an undesirable. And they may well continue to detain him in that context. He would be at significant risk. (App. at 130–33.)

After Semenov's attorney had completed his direct examination of Schoeberlein, a DHS attorney conducted a cross-examination, the pertinent portion of which is as follows:

[DHS attorney]: Okay. Doctor, do you know of any cases of any individuals deported from the United States to Tajikistan and the treatment they face, treatment they face by the government upon their return?

[Schoeberlein]: No, I don't know of any cases.

[DHS attorney]: Okay. Do you know of anybody who's been expelled or remove [sic] from any other country around the world, any European countries or any former Soviet countries to Tajikistan and the treatment they faced upon their return to that country?

[Schoeberlein]: You know of cases where people were returned from, from Russia and where they experienced very bad treatment on the part of the authorities. As the case (indiscernible) people that they, the government (indiscernible) wanted to have returned. So I don't know that they

have any specific desire to have (indiscernible) returned. There are (indiscernible) repatriation to Tajikistan because of the conditions in that country.

[DHS attorney]: Well, how sure are you that Mr. Semenov will be incarcerated or jailed upon his return?

[Schoeberlein]: My assessment is that is highly likely (indiscernible) based on the fact that the government of Tajikistan in many ways continues to operate much like the Soviet government did before it. . . .

[DHS attorney]: But you don't know, other than a few cases of returnees from Russia, people who were wanted by the government of Tajikistan, you don't know of any cases where individuals have actually been returned there, is that correct?

[Schoeberlein]: I do not. (App. at 143–44.)

In an oral decision dated the same day as the hearing, the IJ found, among other things, that Semenov had met his burden under the CAT of establishing that it was more likely than not that he would be subjected to torture if he returned to Tajikistan. The IJ referred specifically to Schoeberlein's "substantial expertise" and his opinion that there was a probability "of at least 50 percent" that Semenov would face torture in Tajikistan because of both that country's authoritarian regime and Semenov's criminal history. Based primarily on Schoeberlein's testimony, the IJ granted Semenov withholding of removal under the CAT.[3]

DHS appealed the IJ's decision to the BIA to the extent that decision granted

Semenov withholding of removal under the CAT. In June 2007, the BIA sustained DHS's appeal and vacated the IJ's grant of withholding of removal.[4] The BIA agreed with DHS that Semenov's claim of fear of persecution was "too speculative" and that Semenov had failed to "produce sufficient evidence to establish that he is more likely than not to be tortured upon return to Tajikistan." Specifically, the BIA pointed to Schoeberlein's testimony that he had no knowledge of particular criminal deportees returning to Tajikistan and noted the absence of documentary evidence regarding the treatment of such individuals by Tajik officials. In the BIA's view, the record contained "no evidence which establishes that mistreatment [by Tajik officials] rising to the level of torture occurs with a frequency which is sufficient to establish eligibility under the CAT." BIA Member Filppu dissented, stating that the BIA should have abstained from considering the appeal until Schoeberlein's testimony was "presented . . . in a more intelligible manner, either through re-transcription or a remand to take the testimony a second time."

Semenov moved the BIA to reconsider its decision, arguing, among other things, that the "BIA cannot base its decision on the record that is not clear or understandable. . . ." Semenov expressed his agreement with BIA Member Filppu's dissent and urged the BIA to remand for the purpose of re-transcribing the hearing testimony. In a one-paragraph per curiam order, the BIA denied Semenov's motion, concluding that he had failed to identify any factual or legal error in its previous ruling.[5]

---

**3.** The IJ's other factual findings and legal conclusions are not relevant for the purposes of this case.

**4.** DHS did not appeal the IJ's other findings to the BIA and the BIA did not discuss those findings in its decision.

**5.** The BIA's order denying Semenov's motion for reconsideration was signed by BIA Mem-

These petitions followed. Semenov challenges both the BIA's decision vacating the IJ's grant of withholding of removal and its denial of his motion for reconsideration. Semenov advances several challenges to the BIA's determination that substantial evidence did not support his withholding of removal claim. He also reiterates his position that the BIA erred in its denial of his motion for reconsideration by declining to remand his case to the IJ because of the alleged unintelligibility of the hearing transcript. Because we agree with Semenov on this last point, we do not reach the other issues he raises, reviewing instead only the BIA's denial of his motion for reconsideration.

## II. Jurisdiction and Standard of Review

We have jurisdiction to review a final order of the BIA pursuant to 8 U.S.C. § 1252. A motion for reconsideration is a "request that the [BIA] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *In re Ramos*, 23 I. & N. Dec. 336, 338 (BIA 2002) (en banc) (internal quotation marks and citations omitted). Such motions "shall state the reasons for the motion by specifying the errors of fact or law in the prior [BIA] decision and shall be supported by pertinent authority." 8 C.F.R. § 1003.2(b)(1); *see* 8 U.S.C. § 1229a(c)(6)(C). We review the BIA's denial of a motion for reconsideration under the abuse-of-discretion standard. *See Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir.

2004); *Nocon v. INS*, 789 F.2d 1028, 1033 (3d Cir.1986). Under that standard, we will not disturb the BIA's discretionary ruling on such a motion unless it is arbitrary, irrational or contrary to law. *See Guo*, 386 F.3d at 562.

## III. Analysis

Although Semenov spends the lion's share of his efforts explaining how the BIA erred in vacating the IJ's grant of withholding of removal, at the end of his opening brief he also urges, in passing, that "this matter should be remanded for a new transcript or for a clearer testimony [sic] to enable a well-informed adjudication of this matter." (Appellant's Br. 11.) Semenov does not point us to any legal authority to support that request. While Semenov does not say so explicitly before us, in his motion for reconsideration before the BIA he alleged a due process violation.[6] *Cf. Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir.1996) (noting that one "of the most basic of due process protections" is "a complete record of the proceeding"); *see, e.g., Teng v. Mukasey*, 516 F.3d 12, 18 (1st Cir.2008); *Garza–Moreno v. Gonzales*, 489 F.3d 239, 241–42 (6th Cir.2007).

Individuals in a removal proceeding are statutorily entitled to "a complete record ... of all testimony and evidence produced at the proceeding." 8 U.S.C. § 1229a(b)(4)(C); *see* 8 C.F.R. § 1240.9 ("The hearing before the immigration judge ... shall be recorded verbatim....."). Regrettably, the government does not always fulfill this statutory obli-

---

ber Filppu, the same BIA Member who dissented from the decision vacating the IJ's grant of withholding of removal.

**6.** To prevail on such a claim in this Court, Semenov "must make an initial showing of substantial prejudice." *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir.2005) (citation omitted). Petitioners advancing such

claims generally bear a heavy burden. *See, e.g., Witjaksono v. Holder*, 573 F.3d 968, 974–76 (10th Cir.2009); *Garza–Moreno v. Gonzales*, 489 F.3d 239, 241–42 (6th Cir.2007). In this case, we express no opinion on the viability of Semenov's claim—to the extent he advances one—that the incompleteness of the hearing transcript constitutes a due process violation.

gation. Indeed, this Court is no stranger to cases in which the hearing transcript has been pockmarked with transcription holes, commonly delineated in the transcript as "(indiscernible)." *See, e.g., Issiaka v. Attorney Gen. of the United States,* 569 F.3d 135, 143 n. 7 (3d Cir.2009); *Kaita v. Attorney Gen. of the United States,* 522 F.3d 288, 294 (3d Cir.2008); *Fiadjoe v. Attorney Gen. of the United States,* 411 F.3d 135, 142–45 (3d Cir.2005); *Balasubramanrim v. INS,* 143 F.3d 157, 163 n. 9 (3d Cir.1998); *McLeod v. INS,* 802 F.2d 89, 95 (3d Cir.1986) ("By independent count, we have noted that there are 96 instances where the transcriber could not make out the testimony and in lieu thereof wrote down 'indiscernible.'" (footnote omitted)); *Sotto v. INS,* 748 F.2d 832, 838 (3d Cir.1984) ("The scope of omissions in the transcript is disturbing.").[7]

Semenov's case represents yet another occasion of the government's breach of its duty to provide a complete and accurate transcript. The portions of Schoeberlein's testimony reproduced above offer but a glimpse of the magnitude of the flaws besetting the transcript in this case. By our count, in Schoeberlein's testimony alone— that is, excluding all other testimony and argument at the hearing—there appear approximately 136 instances of "indiscernible" notations.[8] That figure is remarkable on a standalone basis, but it assumes an even more impressive stature when one considers that those notations are spread over a mere eighteen pages of hearing transcript, including the questions by Semenov's attorney, the DHS attorney and the IJ. We have practically no basis for concluding how much missing testimony those notations are meant to compensate for. *Cf. Oroh v. Holder,* 561 F.3d 62, 66 (1st Cir.2009) (rejecting the petitioner's argument that "important substantive testimony was lacking" because "the gist of the missing words [could] be inferred from their context").

When Semenov asked the BIA to reconsider its decision vacating the IJ's grant of withholding of removal, in keeping with the formalities required for motions for reconsideration, he cited Supreme Court case law and claimed that the unintelligibility of the hearing transcript precluded

---

**7.** We are far from alone in our all-too-frequent encounters with transcription deficiencies in immigration appeals. *See, e.g., Witjaksono,* 573 F.3d at 974 ("In the case under review, there can be little dispute but that the government breached its duty to prepare a reasonably complete and accurate transcript. Not only is the transcript replete with nearly two hundred notations of 'indiscernible,' but key portions of the hearing are all but incomprehensible."); *Oroh v. Holder,* 561 F.3d 62, 65 (1st Cir.2009) ("We are not strangers to the problem of incomplete transcripts in immigration cases." (citations omitted)); *Dong Zhong Zheng v. Mukasey,* 552 F.3d 277, 284 (2d Cir.2009) ("[W]e are compelled to comment upon the quality of the record before us.... [T]he transcript of [the] asylum hearing is littered with the notation '(indiscernible).'"); *Tandia v. Gonzales,* 487 F.3d 1048, 1053 n. 1 (7th Cir.2007) (noting that the transcript was "peppered with the notation 'indiscernible[]'"); *Sterkaj v. Gonzales,* 439 F.3d 273, 279 (6th Cir.2006) ("We note with concern that the government failed to meet its obligation to prepare a reasonably accurate and complete record of the removal hearing...."); *Singh v. Ashcroft,* 367 F.3d 1139, 1145 n. 1 (9th Cir.2004) (noting that "the term 'indiscernible' appears in the transcript some 73 times"); *Rusu v. INS,* 296 F.3d 316, 319 (4th Cir.2002) (stating that "the transcript of [the] asylum hearing testimony is marked 'indiscernible' a total of 132 times"); *Adebisi v. INS,* 952 F.2d 910, 914 n. 10 (5th Cir.1992) (noting the "numerous 'indiscernible' statements in the transcripts").

**8.** This count excludes one instance in which Schoeberlein's response to one of the IJ's questions is registered as "(No audible response)." The response was apparently audible to those present at the hearing, however, since the IJ proceeded directly to his next question.

the BIA from conducting a reasoned adjudication of his case. The remedy he requested for that particular alleged deficiency was remand. His argument in this regard was admittedly terse, occupying only one paragraph of a four-page brief, but his request was not without legal grounding. On the contrary, it was consistent with the regulations governing proceedings before the BIA. *See* 8 C.F.R. § 1003.1(d)(3)(iv) ("A party asserting that the [BIA] cannot properly resolve an appeal without further factfinding must file a motion for remand. If further factfinding is needed in a particular case, the [BIA] may remand the proceeding to the immigration judge or, as appropriate, to the Service.").[9]

When an appeal of an IJ's decision is taken to the BIA, the record of a proceeding before the IJ must be forwarded to the BIA. 8 C.F.R. § 1003.5(a). When reviewing an IJ's decision, the BIA may not review the IJ's factual findings de novo. 8 C.F.R. § 1003.1(d)(3)(i). Instead, the BIA reviews those findings only for clear error. *Id.* We are at a loss to understand how the BIA could have discharged its duty in earnest on the record in this case. In its decision vacating the IJ's grant of withholding of removal, the BIA faulted the IJ's reliance on Schoeberlein's testimony primarily because it found that testimony to be too speculative. The BIA attached particular weight to what it characterized as Schoeberlein's testimony that he had no specific knowledge of the manner in which Tajik officials treat criminal deportees. We pass no judgment on the BIA's conclusion in this respect. However, many of the "indiscernible" notations in the hearing

transcript appear at decidedly crucial moments of Schoeberlein's testimony that very well might have substantially undercut that conclusion. In denying Semenov's motion for reconsideration, the BIA gave short shrift to that eventuality.[10]

For instance, in determining that Semenov had demonstrated a right to relief under the CAT, the IJ explicitly relied on Schoeberlein's testimony that there was at least a fifty percent chance that Semenov would be tortured if forced to return to Tajikistan. Because the transcription of the IJ's oral ruling does not cite to the record, we cannot be sure what portion of that testimony drove the IJ's finding in this respect. The transcript does permit us, however, to venture an educated guess. When asked whether someone in Semenov's place would be tortured in Tajikistan, Schoeberlein responded, in pertinent part, as follows: "My (indiscernible) that he would be quite likely (indiscernible) 50 percent (indiscernible) that he would be (indiscernible) as a known convicted felon. He would be (indiscernible) authorities in Tajikistan (indiscernible) established record of use of torture in various contexts by authorities in Tajikistan." (A130.) When asked what sorts of individuals would be considered undesirable by Tajik officials, Schoeberlein answered: "Well, the fact that he is being return [sic] because he's a convicted criminal. The most important (indiscernible) that there is, I mentioned, (indiscernible) country and (indiscernible) some part of people who have dealing [sic] with the authorities (indiscernible) as well. So those are the (indiscernible) certainly work against him." (*Id.*)

---

9. As a general matter, this Court looks to the function of a motion, not its caption, to determine the type of relief a litigant seeks. *See Smith v. Evans,* 853 F.2d 155, 158 (3d Cir. 1988). Here, while Semenov's motion was captioned as one for reconsideration, the relief it sought was remand.

10. To the extent Semenov alleged a due process violation as a basis for his motion for reconsideration, we reiterate that we will abstain from weighing in on the merits of such a claim.

These examples are only two in a long line that cause us to wonder how the BIA determined that Schoeberlein did not have the requisite level of knowledge of the treatment of criminal deportees by Tajik officials. Furthermore, the BIA's cursory denial of Semenov's motion for reconsideration does not leave us with much confidence that it actually considered whether correcting for the hearing transcript's deficiencies might have vitiated that determination or otherwise led to a different outcome. Even more important, at least for our purposes as a reviewing court, is that the condition of the transcript seriously hamstrings our ability to comply with our statutory mandate. *See* 8 U.S.C. § 1252(b)(4)(A) (providing that "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based"). Accordingly, under the specific circumstances presented here, we believe that the BIA's decision not to remand this case was arbitrary, and therefore constituted an abuse of discretion.

## IV. Conclusion

In light of the muddled condition of the transcript of the proceedings before the IJ, we will grant Semenov's petition for review. Because, however, we cannot assess whether Semenov is entitled to the underlying relief he seeks based on the record in its current form, we will remand to the BIA for further proceedings consistent with this opinion. On remand, the BIA should either obtain a clear copy of the transcript or, if no such copy is obtainable, remand this case to the IJ for a new hearing.