# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-60719

United States Court of Appeals
Fifth Circuit

**FILED**

January 27, 2014

Lyle W. Cayce
Clerk

THIERRY NKURUNZIZA,

Petitioner

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A098-878-550

Before BARKSDALE, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:*

The underlying proceedings for this *pro se* petition have a long and even more convoluted history. Primarily at issue is whether substantial evidence supports the decisions by the Board of Immigration Appeals (BIA) that Thierry Nkurunziza, a native and citizen of Burundi, is not entitled, based on claimed changed country conditions, to asylum, withholding of removal, or relief under the Convention Against Torture (CAT). DISMISSED in PART; DENIED in PART.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60719

## I.

Nkurunziza entered the United States with a nonimmigrant B-2 visitor visa in April 2005, authorizing him to stay until 19 October 2005. He remained beyond that date, however, and, that November, applied for asylum, withholding of removal, and protection under the CAT. His written statement in support of such relief provided: he was a member of the Tutsi tribe; he was attending boarding school at Lycee de Kibimba when genocide, following the assassination of the Burundi president, began in October 1993; and, when most of the Tutsi students at his school were murdered, he was off-campus, but had personal knowledge of what happened and could identify the Hutu faculty responsible for the massacre. His statement further provided: later, when the Burundi government released political prisoners, two members of the school's faculty involved in the Lycee de Kibimba massacre were among those released; after their release, Nkurunziza began receiving verbal threats, causing him to flee 80 miles from his home; after he did so, his cousin (who resembled Nkurunziza) was shot and Nkurunziza's girlfriend was attacked while driving his car; and these incidents prompted him to move again, after which he decided he could no longer remain safely in Burundi.

An asylum officer declined to grant the application. Accordingly, the Department of Homeland Security (DHS) served Nkurunziza on 7 December 2005 with a notice to appear (NTA), charging him with removability as an alien present in the United States for a period longer than authorized. Nkurunziza appeared before an Immigration Judge (IJ), admitted the facts in the NTA, and conceded removability. Over the next few months, the IJ held a hearing on Nkurunziza's asylum application, issued a 6 April 2006 decision denying the relief sought, and ordered him removed to Burundi. Nkurunziza's appeal to the BIA was dismissed through its 23 October 2007 decision. Nkurunziza did

No. 12-60719

not seek a petition for review from this court; he did, however, remain in the United States illegally.

United States Immigrations and Customs Enforcement apprehended Nkurunziza in October 2008. In February 2009, he filed a *pro se* motion to reopen, based on claimed changed country conditions, for which he submitted two letters allegedly from his brother, dated 15 May 2007 and 18 August 2008. Those letters stated that the family home had been visited by one of Nkurunziza's former teachers. In April 2009, the BIA granted the untimely motion to reopen and remanded the matter to an IJ for further proceedings.

A hearing was held before the IJ on 27 January 2010. The sole issue considered was changed country conditions *vel non*. At the hearing, Nkurunziza testified: one of his former teachers had gone to Nkurunziza's family home twice; and the former teacher, previously a member of the FRODEBU party, was now a member of the CNDD-FDD party, which defeated FRODEBU in the 2005 national elections. The IJ determined no testimony at the hearing on changed country conditions affected the BIA's prior decision and, therefore, denied relief. In doing so, the IJ considered Nkurunziza's two alleged letters from his brother, but noted they lacked envelopes to determine their origin. The IJ also noted Nkurunziza was unable to provide any other corroborating evidence.

Nkurunziza appealed the IJ's 27 January 2010 decision to the BIA. With his brief, Nkurunziza submitted as new evidence a letter from his sister, dated February 2010, in which she explained their brother had been murdered by Burundi government officials. Through its 27 October 2010 decision, the BIA affirmed the IJ's denying Nkurunziza's request for asylum or withholding of removal based on changed country conditions, explaining:

No. 12-60719

> [Nkurunziza] offered evidence to the effect that his brother was brutally murdered for the same mix of ethnic and political reasons that [Nkurunziza] was pursued. He further asserts that a former teacher of his, who now belongs to the political party in power, came to his house to look for him in connection with his ability to testify concerning a certain matter, with a view to subjecting him to a similar fate. . . . [R]egardless of the former teacher's interest . . . [Nkurunziza] cannot demonstrate that such tribal and political affiliations would serve as "one central reason" for his persecution. Rather, [Nkurunziza] fears persecution on account of his potential testimony against the perpetrators of a 1993 massacre against students. Likewise, [Nkurunziza] has submitted no evidence establishing that he would be singled out for persecution.

On the other hand, the BIA remanded the matter for the IJ to conduct properly the two-prong inquiry necessary for CAT claims.

Pursuant to that remand, on 31 January 2011, the IJ issued a supplemental decision addressing the CAT claim and summarizing Nkurunziza's testimony from the 27 January 2010 hearing before the IJ. In that supplemental decision, and as discussed *infra*, the IJ noted erroneously: "[Nkurunziza] does not contend this former teacher was involved in the criminal act that he witnessed. Rather, [he] contends the individual had been in jail at the time of the act but is sympathetic to the individuals who carried out the crimes". It appears, however, based on the testimony cited and summarized, that the IJ misunderstood Nkurunziza. Nevertheless, the IJ concluded Nkurunziza only established his former teacher, now a police officer, went to Nkurunziza's home looking for him because the Burundi government was notified of his arrival, after which Nkurunziza did not appear. Consequently, the IJ ruled that Nkurunziza "failed to establish that it is more likely than not that he would be tortured . . . if removed to Burundi". The IJ

also concluded Nkurunziza attempted an inferential leap in asserting the reason "the Burundi government cares whether he returns . . . is because of what he saw some 17 years ago. The evidence adduced does not support such a conclusion". Because Nkurunziza failed to establish what was necessary for the first prong of the CAT inquiry (whether, if the alien is removed, it is more likely than not he will be tortured), the IJ did not reach the second prong (whether such torture would be by, or at the instigation of, a public official or another acting in an official capacity).

Nkurunziza appealed to the BIA; on 21 June 2011, it affirmed the IJ's supplemental decision and dismissed the appeal. Nkurunziza claimed the IJ violated his due process rights by issuing the supplemental decision without affording him a hearing and opportunity to present his sister's letter as evidence. In its decision, the BIA concluded the evidence showed Nkurunziza's brother was killed on 30 April 2009; and, therefore, Nkurunziza could have presented this evidence at the 27 January 2010 hearing before the IJ. At that time, the BIA did not reconsider Nkurunziza's claims regarding asylum and withholding of removal. On 15 December 2011, the BIA denied a motion to reconsider.

After Nkurunziza petitioned for review by our court regarding the 21 June 2011 decision, the Government moved for remand to the BIA, asserting it had failed to address Nkurunziza's claim for CAT protection. Along this line, the BIA must have the first opportunity to address the CAT claim before this court can consider it. As a result, in January 2012, our court remanded the matter to the BIA.

On 23 August 2012, the BIA issued a decision addressing Nkurunziza's CAT claim and concluding he failed to establish he was entitled to relief. The BIA explained that, although Nkurunziza believed "Burundi government officials [were] looking for him because he witnessed the massacre in 1993",

No. 12-60719

Nkurunziza did not present sufficient evidence to support this allegation.  The BIA explained further:

> [Nkurunziza] testified that a government official visited his family home, [but] he did not claim that this person mentioned the 1993 massacre.  Further, [Nkurunziza] has presented insufficient evidence to show that it is more likely than not that the official is seeking him in order to subject [Nkurunziza] to torture.

## II.

Although not referenced by date or decision, Nkurunziza essentially seeks review by our court of:  the 6 April 2006 IJ decision (denying Nkurunziza's original applications for asylum, withholding of removal, and CAT protection); the 23 October 2007 BIA decision (affirming the 6 April 2006 IJ decision); the 27 January 2010 IJ decision (denying Nkurunziza's renewed asylum, withholding of removal, and CAT applications, pursuant to claimed changed country conditions); the 27 October 2010 BIA decision (affirming the IJ's 27 January 2010 decision as to Nkurunziza's application, based on changed country conditions, for asylum or withholding of removal, but remanding as to Nkurunziza's CAT claim on that basis); the IJ's 31 January 2011 supplemental decision (denying Nkurunziza's CAT claim); the 21 June 2011 BIA decision (affirming the IJ's 31 January 2011 supplemental decision and addressing Nkurunziza's contention on appeal that the IJ violated his due process rights); the BIA's 15 December 2011 denial of his motion to reconsider its 21 June 2011 decision; and the 23 August 2012 BIA decision (addressing Nkurunziza's CAT claim subsequent to this court's 23 January 2012 remand).

Because Nkurunziza failed timely to seek review of the BIA's 23 October 2007 decision, or the underlying 6 April 2006 decision by the IJ, jurisdiction is lacking to do so.  Therefore, we review only the BIA's decisions, after this

6

matter was re-opened, regarding changed country conditions. The issues are whether: (1) substantial evidence supports the BIA's ruling Nkurunziza is not entitled, based on changed country conditions, to asylum, withholding of removal, or relief under CAT; (2) the BIA erred in not remanding the matter to the IJ when Nkurunziza introduced new evidence on appeal to the BIA to support his claims for relief; and (3) the BIA properly denied Nkurunziza's motion to hold this matter in abeyance, pending a ruling on his request for prosecutorial discretion by DHS to administratively close his removal proceedings.

Generally, this court reviews only the final decision of the BIA. *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007). When its decision is affected by the IJ's ruling, however, the IJ's decision is also reviewed. *Id.* Legal conclusions are reviewed *de novo*; factual findings, for substantial evidence. *Majd v. Gonzales*, 446 F.3d 590, 594 (5th Cir. 2006) (citation omitted). Under the substantial evidence standard, "reversal is improper unless we decide 'not only that the evidence supports a contrary conclusion, but [also] that the evidence *compels* it'". *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005) (alteration in original) (quoting *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005)). In that regard, "[w]e will not substitute our judgment for that of the BIA or IJ 'with respect to the credibility of witnesses or ultimate factual findings based on credibility determinations'". *Zhao*, 404 F.3d at 306 (quoting *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994)). "The alien bears the burden of proving the requisite compelling nature of the evidence." *Majd*, 446 F.3d at 594 (citation omitted).

## A.

To be eligible for asylum, an "alien must demonstrate that he has been persecuted or has a well-founded fear of persecution on account of one of the factors listed in [8 U.S.C.] § 1101(a)(42)(A)", although "the decision to grant . . .

asylum is within the IJ's discretion". *Zhao*, 404 F.3d at 306. "To establish a well-founded fear of future persecution, an alien must demonstrate 'a subjective fear of persecution, and that fear must be objectively reasonable.'" *Id.* at 307 (quoting *Eduard v. Ashcroft*, 379 F.3d 182, 189 (5th Cir. 2004)). Persecution has been described as "[t]he infliction of suffering or harm, under government sanction, upon persons who differ in a way regarded as offensive (e.g., race, religion, political opinion, etc.), in a manner condemned by civilized governments". *Id.* (alteration in original) (citing *Abdel-Masieh v. INS*, 73 F.3d 579, 583–84 (5th Cir. 1996)). For a "well-founded fear of future persecution, the alien's subjective fear will satisfy this standard if a reasonable person in [his] circumstances would fear persecution if [he] were to be returned to [his] native country". *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994)).

"An application for asylum is automatically considered as a request for withholding of [removal]". *Ralev v. INS*, 39 F.3d 320, No. 94-40027, 1994 WL 612561, at *4 (5th Cir. 25 Oct. 1994) (unpublished) (citing 8 C.F.R. § 208.3(b)). The standard for withholding of removal is more stringent than the standard for asylum. *Id.* (citing *Adebisi v. INS*, 952 F.2d 910, 913 (5th Cir. 1992)). Therefore, failure to satisfy the less stringent asylum standard results in failure to demonstrate eligibility for withholding of removal. *See id.* at *5; *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002).

Nkurunziza's application was re-opened in 2009 to consider claimed changed country conditions; however, the only new evidence introduced was two letters, allegedly from his brother, describing visits to his family home by one of Nkurunziza's former teachers. He testified this former teacher is now a member of the ruling government party. As noted in the IJ's 27 January 2010 opinion, this evidence does not affect the BIA's 23 October 2007 decision. Additionally, Nkurunziza submitted a letter from his sister claiming their

brother was murdered by government officials.  That evidence, however, was not submitted to the IJ at the 27 January 2010 hearing, and will not be considered for his application for asylum or withholding of removal. Nkurunziza cannot meet his burden to show substantial evidence of a well-founded fear of future persecution based on changed country conditions. Certainly, the scant evidence does not *compel* ruling against the IJ and BIA decisions.  *See Zhang*, 432 F.3d at 344–45.

**B.**

Under the CAT, an alien must prove that, if he is removed:  (1) it is "more likely than not that he . . . would be tortured", (2) "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity". 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); *Trejo-Robles v. Holder*, 348 F. App'x 982, 984 (5th Cir. 2009).  For purposes of the CAT, "torture" is defined as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him . . . information or a confession, punishing him . . . for an act he . . . committed or is suspected of having committed, or intimidating or coercing him . . . for any reason based on discrimination of any kind . . . .

8 C.F.R. § 1208.18(a)(1).

The BIA's 23 August 2012 decision regarding the CAT claim was based on the IJ's 31 January 2011 supplemental decision.  Nkurunziza is correct in his assertion that, as discussed *supra*, the IJ misconstrued his testimony at the 27 January 2010 hearing (erroneously believing Nkurunziza asserted the teacher was not involved in the school massacre, but was merely sympathetic to the individuals who carried out the crimes).  Nevertheless, both the IJ and the BIA ruled:  even if the visits by the teacher to Nkurunziza's family home

No. 12-60719

in Burundi were connected with the 1993 massacre, Nkurunziza failed to meet his burden of proving it is "more likely than not" the teacher and government officials who accompanied him, seek to torture Nkurunziza. Consequently, Nkurunziza is not entitled to relief under the CAT based on changed country conditions.

## C.

### 1.

Nkurunziza claims the BIA erred through its 21 June 2011 decision by dismissing his appeal and erred again through its 15 December 2011 denial of his motion to reconsider when he introduced evidence of his brother's murder. Nkurunziza fails to show error on the part of the BIA. 8 C.F.R. § 1003.1(d)(3) (prohibiting BIA from engaging in fact finding on appeal and requiring parties to file motions for remand if fact finding needed); *see also Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 410 n.9 (5th Cir. 2010) (noting parties cannot introduce new evidence on appeal not considered by the IJ). To the extent Nkurunziza seeks to appeal the BIA's 15 December 2011 denial of his motion to reconsider, this court does not have jurisdiction because he failed timely to seek review of that decision. *See Guevara v. Gonzales*, 450 F.3d 173, 176 (5th Cir. 2006) (citation omitted) (explaining BIA's dismissal of an appeal and denial of a motion to reconsider are distinct final orders, requiring separate petitions for review).

### 2.

Nkurunziza also claims the BIA improperly denied his motion to hold his case in abeyance pending a ruling on his request for prosecutorial discretion by the DHS. Nkurunziza does not challenge the reasons for the denial of his motion, but instead only asserts he is entitled to relief. As a result, he has abandoned the issue. *See Soadjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir. 2003).

No. 12-60719

## III.

For the foregoing reasons, the petition is dismissed in part for lack of jurisdiction; relief on the remaining claims is DENIED.