Lyndon Erickson McLEOD, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 86–3009.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Aug. 20, 1986.

Decided October 1, 1986.

Ann L. Hardy, Richmond, Va., Richard D. Keeling, Christiansted, St. Croix, V.I. for petitioner.

Richard K. Willard, Asst. Atty. Gen., Civ. Div., Robert Kendall, Jr., Asst. Director, James A. Hunolt, Office of Immigration

Litigation, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

Before BECKER and MANSMANN, Circuit Judges and TEITELBAUM, District Judge *

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is a petition for review of an order of the Board of Immigration Appeals ("BIA") which denied the request of petitioner Lyndon McLeod for asylum and withholding of deportation under Sections 208 and 243(h) of the Immigration and Naturalization Act, 8 U.S.C. §§ 1158, 1253(h). McLeod alleges principally that (1) he met the burden of proof required to establish eligibility for relief from deportation and (2) the proceedings before the BIA were tainted by procedural flaws, including a woefully deficient transcript which renders it impossible to review the case fairly. Although this Court has previously registered its discontent with the quality of transcripts provided us by the Immigration and Naturalization Service and views that matter most seriously, for the reasons that follow the petition for review will be denied.

### I.

McLeod is a 30-year-old native and citizen of Grenada. On July 1, 1980, he entered the United States as a non-immigrant business visitor. He overstayed his visa, which expired on September 1, 1980, and continues to reside in the U.S. Virgin Islands. In December 1982, the INS served McLeod with an order to show cause why he should not be deported, alleging that he had remained in the United States longer than authorized. McLeod conceded deportability and sought relief through an application for asylum pursuant to 8 U.S.C. § 1158. The Code of Federal Regulations provides that an application for asylum also constitutes a request for withholding of deportation under 8 U.S.C. § 1253(h). 8 C.F.R. § 208.3(b).

McLeod's request for relief stems from his opposition to the Grenadian governments of Sir Eric Gairy, who controlled the country from 1974 to 1979, and Maurice Bishop, who rose to power in 1979. In his application for asylum, McLeod stated that he feared imprisonment and torture by the Bishop government because of his political opinions and his affiliation with one James Herry, who was exiled from Grenada by the Bishop government. His fears of persecution were aroused by friends in Grenada and the United States, who suggested to him in 1981 and 1982 that he would be persecuted by the Bishop government if he returned to Grenada.

In September 1983, Maurice Bishop was stripped of most of his powers by the Central Committee of his party, the New Jewel Movement. The events that followed are well known. In mid-October, during a coup attempt by a group known as the Revolutionary Military Council, Bishop was put under house arrest and eventually murdered. In the midst of these events, Governor-General Sir Paul Scoon, the legal head of state of Grenada, appealed for help to the leaders of the six other members of the Organization of Eastern Caribbean States. That organization invoked the security provisions of its 1981 agreement and called on Barbados, Jamaica, and the United States for assistance.

On October 25, 1983, United States and Caribbean military forces landed on the island and detained the forces of the Revolutionary Military Council. On November 15, Governor-General Scoon appointed an Advisory Council to serve as an interim government until elections could be held. In the parliamentary elections, which were conducted in 1984, the New National Party won 14 of 15 parliamentary seats and the Grenada United Labor Party won one seat. On December 4, 1984, Herbert Blaize of the New National Party was sworn in as Gre-

---

* The Honorable Hubert I. Teitelbaum, Chief United States District Judge for the Western District of Pennsylvania, sitting by designation.

nada's Prime Minister, and he remains in that position today. *See generally* U.S. Department of State, Country Reports on Human Rights Practices for 1983.

After Bishop was assassinated and his government overthrown, McLeod continued to press his claims for relief from deportation on the ground that elements of the Gairy and Bishop regimes continued to persecute their former opponents. In a hearing before an immigration judge in August, 1984, McLeod testified that while in Grenada, he had expressed his political opinions about Gairy's government and Bishop's Peoples Revolutionary Government among small gatherings of friends. He stated that he feared that factions loyal to Gairy and Bishop would retaliate against him because of his political views. He also contended that the current Grenadian government continues to hold nineteen political prisoners whom it identifies as suspects in the murder of Maurice Bishop.

In an oral decision in October 1984, the immigration judge concluded that McLeod had not established a well-founded fear of persecution or shown that his life or freedom would be threatened upon return to Grenada. He noted that McLeod had never spoken in public against the government of Gairy or Bishop and had never been persecuted by either government. The judge observed further that there had been a change of government in Grenada since McLeod filed his application for asylum and that McLeod was unable to articulate what would happen to him if he were to return to Grenada in 1984.

On December 13, 1985, the BIA dismissed McLeod's appeal from the decision of the immigration judge, concluding that McLeod had not submitted evidence sufficient to establish a well-founded fear of persecution by the current government in Grenada or any other segment of Grenadian society. On January 6, 1986, McLeod

petitioned for review of the BIA's final order.

## II.

■ This case involves both an application for asylum and a request for withholding of deportation. To qualify for a grant of asylum, which is at the discretion of the Attorney General, an applicant must demonstrate a "well-founded fear of persecution." 8 U.S.C. §§ 1158, 1101(a). To qualify for withholding of deportation under 8 U.S.C. § 1253(h), which is mandatory relief, an alien must demonstrate a "clear probability of persecution." *INS v. Stevic*, 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). This court has held that the standards under the two statutes are equivalent. *Rejaie v. INS*, 691 F.2d 139, 146 (3d Cir.1982). In order to qualify for relief under either statute, an applicant must present objective evidence that demonstrates a clear probability of persecution upon return to his native country. *Id.* We stated explicitly in *Marroquin-Manriquez v. INS*, 699 F.2d 129, 133 n. 5 (3d Cir.1983), that the standard of review applicable on appeal of a final order of the BIA is abuse of discretion. The panel rejected the "substantial evidence" test because "it ignores the necessary application of expertise implicated in the determination that a fear of persecution is well founded." *Id.*[1]

■ McLeod argues that he showed a well-founded fear of persecution in Grenada and that the BIA abused its discretion in failing to find that he qualified for relief. McLeod contends principally that his evidence, which he says showed that there were still political detainees in Grenada's Richmond Hill Prison and that factions of the two previous governments were still active on Grenada, was sufficient to establish a well-founded fear of persecution. If that evidence was insufficient, McLeod ar-

---

**1.** McLeod argues that we should employ the substantial evidence test, notwithstanding the decision in *Marroquin-Manriquez,* because the immigration judge's failure to include certain material in the administrative record left the immigration judge and the BIA incapable of

exercising their discretion. This argument fails, however, because the immigration judge acted within the ambit of his discretion in declining to include the referenced material. *See infra* at Section IV.A.

gues that the addition of recent newspaper articles to the original evidence establishes a *prima facie* case and requires a remand pursuant to 28 U.S.C. § 2347(c). We disagree.

As noted above, this court has construed the "well-founded fear of persecution" requirement in the asylum statute to mean the same as the "clear probability of persecution" standard that applies to withholding of deportation. *Rejaie,* 691 F.2d at 146. An applicant seeking relief under either sections 208 or 243(h) must present some objective evidence establishing a realistic likelihood that he would be persecuted in his native land. *Id.* at 144. McLeod, however, has not presented such objective evidence. Although he suggested that the government of Grenada continues to hold political prisoners, McLeod offered no evidence to refute the Grenadian government's report that the remaining prisoners are on trial for the murder of Maurice Bishop. McLeod's allegations that factions of the Gairy and Bishop governments would persecute him as a former opponent are highly speculative. He offered no evidence of similar persecution against others after Bishop's demise, and he presented no objective evidence that he personally would be persecuted upon return to Grenada. He conceded that he never had been persecuted by the Gairy or Bishop governments

when they held power, and the evidence of his association with James Herry is insufficient to support his burden of proof even in the absence of a change of government. In light of McLeod's failure to establish a clear probability of persecution, we cannot say that the BIA abused its discretion in dismissing his appeal.[2]

### III.

McLeod offers a host of procedural objections to the administrative proceedings and argues that these defects require a remand of his case to the BIA. Those objections have varying degrees of merit; none, however, entitles him to relief.[3]

### A.

McLeod first objects to the failure of the immigration judge to include in the record a copy of the State Department's Country Reports on Human Rights Practices for 1983 ("Country Reports"). The immigration judge took "judicial notice" of the document, and McLeod argues that this procedure erroneously deprived him of the opportunity to rebut information in "Country Reports" that was harmful to his case.[4] He also complains that the error prevented the BIA from using "Country Reports" during its review of the immigration judge's decision.

**2.** We note that the Supreme Court recently granted certiorari to decide whether the "well-founded fear of persecution" required for asylum is equivalent to the "clear probability of persecution" required for withholding of deportation. Contrary to our decision in *Rejaie,* the Ninth Circuit held that the former burden is more lenient. *Cardoza-Fonseca v. INS,* 767 F.2d 1448 (9th Cir.1985), *cert. granted,* — U.S. —, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986). Even if we were to apply the more lenient standard of the Ninth Circuit to this case, we would hold that McLeod has not established a well-founded fear of persecution, because he has not pointed to "specific, objective facts that support an inference of past persecution or risk of future persecution." 767 F.2d at 1453.

**3.** Most of McLeod's objections allege violations of the procedural requirements of the Administrative Procedure Act and Title 8 of the Code of Federal Regulations. To the extent that he also

claims that his constitutional right to due process has been infringed, we conclude that none of the actions of the INS was so fundamentally unfair as to warrant relief on due process grounds.

**4.** Official notice, rather than judicial notice, is the proper method by which agency decisionmakers may apply knowledge not included in the record. The Administrative Procedure Act allows a decisionmaker to take "official notice" of material not appearing in the evidence in the record. 5 U.S.C. § 556(c). Official notice is a broader concept than judicial notice. *See* 4 Stein, *Administrative Law* § 25.01 (1986). Both doctrines allow adjudicators to take notice of commonly acknowledged facts, but official notice also allows an administrative agency to take notice of technical or scientific facts that are within the agency's area of expertise. *See NLRB v. Seven-Up Bottling Co.,* 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953).

■ We believe that the immigration judge should have included the 1983 "Country Reports" in the record, and we have granted McLeod's motion to include it.[5] The failure of the immigration judge to include "Country Reports" in the record, however, is harmless. The mere fact that the immigration judge took notice of "Country Reports" does not invalidate his decision unless his action substantially prejudiced the result. *U.S. v. Pierce Auto Freight Lines*, 327 U.S. 515, 530, 66 S.Ct. 687, 90 L.Ed. 821 (1946). In this case, the immigration judge specifically stated that he did not base his decision on "Country Reports." Furthermore, the APA requires that the parties be permitted to rebut officially noticed facts only "when the agency decision rests on the facts not appearing in the record." 5 U.S.C. § 556(e). The sole officially noticed fact that was material to the immigration judge's decision was the change in governments in Grenada, and McLeod did not request an opportunity to rebut that obvious fact.[6]

### B.

■ McLeod's next objection is that the failure of the immigration judge to seek a second advisory opinion from the Bureau of Human Rights and Humanitarian Affairs of the Department of State ("BHRHA") after the overthrow of the Bishop government violated the requirement in the Code of Federal Regulations that an advisory opinion be introduced into evidence. 8 C.F.R. § 208.10(b). The decision as to whether to seek a second advisory opinion from the BHRHA is within the discretion of the immigration judge. The regulation states that the immigration judge shall not request a second opinion unless "circumstances have changed so substantially since the first opinion was provided that a second referral would materially aid in adjudicating the asylum request." 8 C.F.R. § 208.10 (1986). The immigration judge apparently concluded that if the BHRHA had no information supportive of McLeod's request for asylum during the period in which the purported persecutor (Bishop) was alive and in power, a second opinion issued after the death of Bishop and the installation of a reform government would not materially aid the adjudication. This conclusion is eminently reasonable, particularly when we view it in combination with the weakness of McLeod's allegations of potential persecution after the overthrow of Bishop's government. We cannot say that the immigration judge abused his discretion in declining to seek a second advisory opinion.

### C.

■ McLeod's most compelling procedural claim concerns the poor quality of the transcripts of the proceedings before the

5. McLeod's motion for acceptance of non-record material was unopposed as to the 1983 "Country Reports." In his motion, McLeod also requested that we include in the record: (1) the pages from the 1984 "Country Reports" pertaining to Grenada; (2) newspaper articles on Grenada from *The Washington Post;* (3) the pages from the 1985 Amnesty International Report pertaining to Grenada; and (4) a newspaper article on Grenada from the *Carib News.* These materials all post-date the deportation hearing, and we review the BIA's decision in light of the circumstances existing at the time of the ruling. *See Carvajal-Munoz v. INS*, 743 F.2d 562, 564 n. 2 (7th Cir.1984). Because these materials are not relevant to our review of the BIA decision, we denied the motion to include them in the record.

These items also are insufficient to justify a remand of the case pursuant to 28 U.S.C. § 2347(c). In order to satisfy the requirements of that statute, the evidence must be new and material. The additional documents do not add facts that would create a *prima facie* case of persecution, and we conclude that they are not sufficient to warrant a remand for that additional reason.

6. McLeod's claim that the action of the immigration judge prevented him from using "Country Reports" to his advantage is also meritless because McLeod could have offered "Country Reports" as evidence himself. An alien has the burden of proof in a deportation hearing, 8 C.F.R. § 208.5, and the INS does not normally have a duty in this situation to provide information on the alien's behalf. In any event, the material in "Country Reports" that McLeod claims would have helped to establish his eligibility for relief is irrelevant. It concerns alleged persecution that occurred *before* the change of governments in late 1983.

immigration judge. By independent count, we have noted that there are 96 instances where the transcriber could not make out the testimony and in lieu thereof wrote down "indiscernible." [7] We are appalled by such faulty records, and we do not take petitioner's objection lightly. Moreover, this is at least the second time that this court has registered its discontent with the quality of transcripts provided by the INS. *See Sotto v. United States I.N.S.*, 748 F.2d 832, 838 (3d Cir.1984) ("The scope of omissions in the transcript is disturbing.").

After viewing the omissions individually and in the context of the entire record, we conclude that the errors do not bear on McLeod's failure to establish even a *prima facie* showing of likely persecution. Many of the "indiscernibles" occur within colloquies between the judge and counsel that do not bear on the legal or factual issues in the case, and the import of many of the omissions is detectable from the context of the dialogue. In no case does the indiscernible portion come at a critical juncture in the transcript. We conclude, therefore, that McLeod has had a fair review of his claims for relief from deportation. We strongly recommend, however, that the INS review its procedures for preserving a record of testimony, so that the problem we have identified will be eliminated. Transcript deficiencies reflect adversely upon the integrity of the administrative process, and upon the possibility of meaningful review during the critical appellate stage.[8]

## IV.

We find that McLeod has not established a likelihood of persecution upon return to Grenada and that the INS followed ade-

---

**7.** The transcript also contains numerous spelling and grammatical errors.

**8.** McLeod's remaining claims are patently groundless. He argues that the immigration judge applied an improper standard, which required petitioner to show that his life *and* freedom would be threatened upon return to Grenada. In his oral decision, however, the judge properly outlined the requirements for relief, which include that the applicant's life or freedom be threatened, and his statements at the deportation hearing made clear that he was concerned with deprivation of either life or freedom. McLeod also maintains that the immigration judge's line of questioning had a deleterious effect on the proceeding because it elicited too many "no" responses, which discouraged McLeod. We find that the immigration judge pursued a reasonable line of inquiry. McLeod has not alleged that the immigration judge attempted to intimidate or harass him, and the legitimate reason for the abundance of negative responses appears to be the lack of merit in McLeod's claim for relief.

McLeod contends that the BIA denied him due process by failing to review the record before reaching a decision. Agency action, however, is entitled to a presumption of regularity. *Citizens of Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Frisby v. U.S. Department of Housing & Urban Development*, 755 F.2d 1052. 1055 (3d Cir.1985). The burden of proof rests with the party alleging irregularity. *Frisby*, 755 F.2d at 1055. McLeod has presented nothing to indicate that the BIA did not review the record when it considered the appeal. McLeod's claim that the State Department withheld critical information on Grenada in preparation of its advisory opinion also is speculative and uncorroborated by objective evidence.

McLeod argues that he was deprived of a meaningful advisory opinion from the BHRHA when its only opinion was a "form letter" that pre-dated the overthrow of the Bishop government. We cannot say that the form of the opinion violated the procedural requirements for deportation hearings. The immigration judge must seek an advisory opinion from the BHRHA. 8 C.F.R. § 208.7 (1986). As noted above, this opinion is one of several elements that the immigration judge and the BIA use to evaluate the applicant's fear of persecution. The immigration judge received a letter from the BHRHA which stated, in part, that the State Department did not have "any information supportive of the applicant's request for asylum." Such a statement by the BHRHA is material to the evaluation process. The fact that the BHRHA's findings are communicated in a standard form does not imply that McLeod's claims were not investigated. There is no requirement in the statute or regulations that the BHRHA respond directly and specifically to every allegation made by an applicant for asylum.

Finally, McLeod's apparent allegation that the standard form of the advisory opinion deprived Grenadians of equal protection of the law is frivolous. There is nothing to indicate that all Grenadians receive the same type of advisory opinion or that the BHRHA's decision on the appropriate type of advisory opinion is based on considerations of race or national origin.

quate procedures in evaluating McLeod's request from deportation. The petition for review will therefore be denied.