

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-10-2008

# Desforges v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2199

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Desforges v. Atty Gen USA" (2008). *2008 Decisions.* Paper 134.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/134

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2199
_____

ANNE MARIE NAZAIRE DESFORGES;
WIGENSIE DESFORGES;
WIDNIE DESFORGES,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Review of a Decision of the
Board of Immigration Appeals
(Agency Nos. A95-885-626, A95-885-627, A95-885-628)
Immigration Judge: Henry S. Dogin
_____

Submitted Under Third Circuit L.A.R. 34.1(a),
November 17, 2008

Before: SCIRICA, Chief Judge, FUENTES and HARDIMAN, Circuit Judges.

(Opinion Filed: December 10, 2008)

_____

OPINION OF THE COURT

_____

FUENTES, Circuit Judge:

Anne Marie Nazaire Desforges ("Desforges") and her two minor daughters, Wigensies and Widnie Desforges, are natives and citizens of Haiti who entered the United States as visitors for pleasure in July 2001. The government charged them with removability in 2002 after they overstayed their visas, and Desforges subsequently applied for asylum, withholding of removal, and protection under the Convention Against Torture. The Immigration Judge ("IJ") determined that Desforges's account of persecution on account of her journalist husband's political opinions was not credible, and thus denied her application. The IJ's credibility determination was affirmed by the Board of Immigration Appeals ("BIA"), and is now challenged by Desforges.[1] Because we find that the IJ's finding was supported by substantial evidence in the record, including a number of inconsistencies in Desforges's description of her persecution, we will deny the petition for review.

**I.**

We have jurisdiction to review the final order of removal issued by the BIA under 8

---

[1] Petitioner also challenges the IJ's denial of a continuance of her hearing in order to allow time to check the authenticity of certain documents offered by Desforges. This decision was immaterial to the outcome of Desforges's asylum application because the IJ implicitly assumed that all documents in the record were authentic for the purposes of his ruling. Therefore, we need not address whether the denial of the continuance was in error. Cf. McLeod v. Immigration & Naturalization Serv., 802 F2d 89, 94 (3d Cir. 1986) (holding that IJ's error does not invalidate decision unless it "substantially prejudiced" the result). Furthermore, even if the denial of the continuance had some effect, Petitioner did not exhaust this issue by raising it before the BIA. See Bonhometre v. Gonzales, 414 F.3d 442, 447 (3d Cir. 2005).

U.S.C. § 1252(a)(1). We review adverse credibility findings under the substantial evidence standard, upholding them "'to the extent that they are supported by reasonable, substantial and probative evidence on the record considered as a whole, and . . . revers[ing] those findings only if there is evidence so compelling that no reasonable factfinder could conclude'" the witness was not credible. Mulanga v. Ashcroft, 349 F.3d 123, 131 (3d Cir. 2003) (quoting Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003)). Where the BIA has deferred to an IJ's finding, but also independently discussed some of the underlying bases for the determination, we have jurisdiction to review both the BIA's and IJ's decisions. Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004).

## II.

Because we write for the parties, we discuss only the facts relevant to our conclusion. Since 1991, Desforges, a pastry chef, has been married to a Haitian photojournalist. During the 1990s he worked for a publication and radio station critical of the government, which was at the time run by the Lavalas party under President Jean-Bertrand Aristide. Desforges claims that she was persecuted because of her husband's work, and has at several times described a specific incident in which she was allegedly attacked in retaliation for his reporting.

In her testimony before the IJ, Petitioner explained that after an attempted coup on June 5, 2001, Lavalas supporters took to the streets to attack their political opponents. Desforges's husband did not report on the coup that day. On June 6, after he left for work,

-3-

several people came and began shouting outside Petitioner's house. Around 8:30 a.m., six of them entered the house and physically assaulted Desforges and put their hands inside her vagina, cursing and saying that "you're the ones disturbing the government." (A.R. 120.) Desforges and her children escaped and fled the house, which was then burned down.

A justice of the peace came to the scene and documented Desforges's account of the burning down of her house in an "affidavit of loss." (A.R. 266-67.) That report differs from Petitioner's testimony before the IJ. Most prominently, it indicates that the house was burned down around 8 p.m. The affidavit itself is dated June 5, 11 p.m., indicating that the incident must have occurred either on June 5 or earlier, whereas at her hearing Desforges said she was attacked on June 6, the day after the coup. When asked about the date discrepancy at the hearing, Desforges could not explain it. Additionally, the document indicates that the house was destroyed by three men in a white van by means of some sort of explosion, details mentioned nowhere else by Petitioner.

In yet another account, given by Desforges in an assessment prior to her hearing before the IJ, she stated that on June 5, 2001, her husband interviewed a political exile who told him he was on the "kill list." (A.R. 189.) In that version, several Aristide supporters came to Desforges's house the night of June 5 and one man beat and raped her, only saying during the assault, "I need you." (A.R. 189.) Afterward, the group burned down her house and vandalized her store. The asylum officer conducting the interview

-4-

noted that Desforges had at different times said both that she was attacked because she was against Aristide and because she was a successful business owner.

Finally, in Petitioner's original application for asylum, she described her attack as having been caused by her husband's interview of an opposition leader, which sparked a march on her house by Aristide supporters who broke into the house and took off her clothes. She did not mention that her house had been burned down.

Based on the inconsistencies among these accounts with respect to the date, the time of day, the number of assailants, the sequence of events, and whether her husband sparked the incident by interviewing an opposition leader, among other things, the IJ found that Desforges was not credible. The BIA affirmed that finding under clear error review, agreeing with the IJ's identification of inconsistencies in Desforges's story.

**III.**

Both the BIA and the IJ provided sufficient support for their findings. They cited specific discrepancies as to the time and date of the alleged attack (8:30 a.m. on June 6 versus 8 p.m. on or before June 5), whether or not her husband criticized the coup the day before the attack, and how many men attacked her and what they said and did to her. See Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) ("We look at an adverse credibility determination to ensure that it was 'appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . .'") (citation omitted).

We agree that these were material inconsistencies. See Berishaj v. Ashcroft, 378

F.3d 314, 323 (3d Cir. 2004) ("Generally, minor inconsistencies and minor admissions that 'reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding.'") (citation omitted). They reach central details of Desforges's alleged persecution, including how many men attacked her, what they did to her, and whether her house was burned down or her store was vandalized. Although in other circumstances we have held variations in the reported date of an event to be minor discrepancies, see Kaita v. Attorney General, 522 F.3d 288, 297-98 (3d Cir. 2008), we have not extended that holding to cases where the date was tied to a "particular event." Cf. Xie, 359 F.3d at 243 (concluding that alien's varying reports that he was detained after the birth of his second or third child was material because "[h]e purported to be able to tie the date of his detention to a particular event"). Additionally, inconsistencies as to what persecutors said during a relevant incident regarding the reason for persecution may be relevant to judging credibility. Cf. Bin v. Attorney Gen., 543 F.3d 114, 126-27 (3d Cir. 2008) (upholding adverse credibility determination in part based on applicant's inconsistency as to whether police officers gave him a reason for his arrest).

While Desforges's inconsistent statements regarding the timing of the attack and the conduct of the perpetrators were the most notable, the other discrepancies cited by the BIA and IJ provide further support for the adverse credibility determination. Meanwhile, the record contains no evidence compelling us to reject the credibility ruling.

For the foregoing reasons, we deny Desforges's petition for review.

-6-