**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1599
_____

MOHAMED HASSAN SHEIKH IBRAHIM, AKA Mohamed Hassan Ibrahim,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A072-377-286)
Immigration Judge:  Honorable Walter A. Durling
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 27, 2017

Before:  Ambro and Krause, Circuit Judges, and Conti, District Judge.[*]

(Opinion filed: September 28, 2017)
_____

OPINION[**]
_____

KRAUSE, *Circuit Judge*

---

[*] Honorable Joy Flowers Conti, Chief District Judge for the United States District Court for the Western District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Petitioner Mohamed Hassan Sheikh Ibrahim, a.k.a. Mohamed Hassan Ibrahim,[1] petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming an order of an Immigration Judge ("IJ") denying his motion to reopen his removal proceedings. Because the BIA did not abuse its discretion, we will deny the petition.

## I.    Background

Sheikh, a native and citizen of Somalia, entered the United States as a teenager in 1990 and was granted asylum in 1995. In 1996, his status was adjusted, and he became a lawful permanent resident. In 2011, the Government charged him as removable.

The Government issued a notice to appear, which alleged that Sheikh had incurred two convictions, a December 2000 Virginia conviction for uttering and delivering a forged check, and a March 2011 federal conviction for falsely representing himself as a U.S. citizen, using a false passport, and using a false naturalization certificate. On the basis of these convictions, the Government charged Sheikh as removable on three grounds: (1) Immigration & Nationality Act ("INA") § 237(a)(2)(A)(ii) for having been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct; (2) INA § 237(a)(3)(D) for having falsely represented himself as a United States citizen; and (3) INA § 237(a)(2)(A)(iii) for having been convicted of an

---

[1] We will refer to the petitioner as Sheikh, as he uses this surname in his brief.

aggravated felony as defined in § 101(a)(43)(R) of the INA.[2]  In October 2011 the IJ

ordered Sheikh removed.[3]  He waived his right to appeal to the BIA.

In 2016, Sheikh returned to the agency.  He filed a motion to reopen before the IJ[4]

asserting changed country conditions and seeking to apply for withholding of removal

under INA § 241(b)(3) and protection under the Convention Against Torture ("CAT").

In particular, he argued that, after he was ordered removed, "ISIS obtained a foothold in

Somalia and declared a worldwide caliphate," and the Federal Government of Somalia,

established in 2012, had engaged in significant human rights abuses.  J.A. 24.  In

comparison, he noted that at the time of his earlier proceedings Somalia was ruled by the

Transitional Federal Government ("TFG").  J.A. 25.  Sheikh cited the State Department

Report for 2011, which indicated that, while TFG "did not have a perfect human rights

record" and had "committed abuses," it also detained fewer people and "usually released

detainees quickly."  J.A. 25.  He further stated that TFG made a commitment to helping

people with disabilities but that people with disabilities nevertheless reported cases of

---

[2] INA § 101(a)(43)(R) defines an aggravated felony as "an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year." *See* 8 U.S.C § 1101(a)(43)(R).

[3] The summary of the IJ's oral decision does not provide the basis for the removal order; it merely states that Sheikh was ordered removed.  The decision itself was never transcribed.  Sheikh notes that, before the IJ, he waived any right to contest removability.

[4] With his motion to reopen, in addition to information about his personal circumstances, Sheikh included a variety of documentation describing the current state of Somalia, with particular focus on the violence and extremism of Al-Shabaab.

discrimination. Additionally, he acknowledged that the 2011 State Department Report did not contain a section on the internally displaced in Somalia.

In his motion, Sheikh argued that he could make a prima facie showing of entitlement to withholding because he would face a clear probability of persecution on the basis of his political opinion (his opposition to ISIS), his religion (his unwillingness "to conform to ISIS's radical version of Islam"), and his social group (he is a former United States Army contractor). J.A. 28. He also asserted that he would suffer persecution and torture in Somalia because he has a disability (epilepsy) and because he is a member of a minority clan that has been internally displaced.

The IJ denied Sheikh's motion, concluding, as to the "new" evidence of ISIS's operation in Somalia, that Sheikh had failed to present sufficient evidence to warrant reopening, and, as to the other alleged changed conditions, that he had not presented evidence that was "new" and unavailable at the time of his October 2011 removal hearing. More specifically, the IJ stated that Sheikh's evidence fell "far short" of establishing a likelihood that he would face persecution or torture from ISIS, and that Al-Shabaab had existed at the time of Sheikh's last hearing. J.A. 5. Similarly, the IJ concluded that evidence of persecution and torture of minority clans was not new. Lastly, while acknowledging that persons with disabilities "suffer disproportionately" in Somalia, the IJ observed that this was a longstanding concern and that Sheikh already suffered seizures dating back to 1997, and therefore questioned why Sheikh had not sought relief on this ground at his last hearing. J.A. 5. In considering that issue, the IJ

4

noted that he accessed a 2011 report by the Swedish International Development Cooperation Agency entitled "Disability Rights in Somalia," which discussed the plight of the disabled in Somalia, and which the IJ acknowledged was outside the record.

Sheikh appealed to the BIA, arguing, inter alia, that reopening was warranted based on changed country conditions and that the IJ erred by relying on the report outside the record, "Disability Rights in Somalia." In further support of reopening, he submitted the State Department's Somalia Country Reports on Human Rights Practices for 2010 and 2015. Sheikh also presented a motion to remand with additional evidence related to ISIS's incursion into Somalia since the IJ denied reopening.

The BIA dismissed Sheikh's appeal. It concluded that the motion to reopen was untimely and Sheikh had not overcome that time bar with evidence of a material change in country conditions since October 2011 regarding any of his claims. Rejecting Sheikh's challenge to the IJ's consideration of evidence outside the record, the BIA pointed out that Sheikh had not offered evidence of conditions in October 2011 for persons with disabilities and that "the way to determine whether there has been a material change in country conditions is by comparing evidence of country conditions at the time of the motion to reopen with those that existed at the time of the merits hearing below." J.A. 11 (citing *Matter of S-Y-G-*, 24 I. & N. Dec. 247, 253 (BIA 2007)). The BIA further noted that Sheikh had failed to submit evidence of country conditions in October 2011 for members of minority clans and the internally displaced. Addressing Sheikh's claims based on ISIS's influence in Somalia, the BIA held that, even if he had shown changed

country conditions, he did not establish prima facie eligibility for asylum, withholding of removal, or CAT protection. The BIA also denied the motion to remand.

## II. Discussion

Sheikh presents a timely petition for review. We have jurisdiction pursuant to 8 U.S.C. § 1252(a). We review the denial of a motion to reopen for abuse of discretion and will not disturb the decision "unless [it is] found to be arbitrary, irrational, or contrary to law."[5] *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004) (citation omitted). Upon review, we find that the BIA did not abuse its discretion in concluding that Sheikh's motion, filed years after the entry of a final order of removal, was untimely in the absence of new and material evidence of changed country conditions.

Generally, an alien may file one motion to reopen "within 90 days of the date of entry of a final administrative order of removal." 8 C.F.R. § 1003.23(b)(1); *see also* 8 U.S.C. § 1229a(c)(7)(C)(i). However, the time limitation does not apply if the basis of the motion is for asylum, withholding, or CAT relief, and the motion "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous proceeding." 8 C.F.R. § 1003.23(b)(4)(i); *see also Pllumi v. Att'y Gen.*, 642 F.3d 155, 161 (3d Cir. 2011). "The

---

[5] Although Sheikh discusses remand as an appropriate way to allow consideration of the report titled "Disability Rights in Somalia," he does not present any argument as to the BIA's denial of his motion to remand. Accordingly, we do not consider that ruling. *See United States v. Pellulo*, 399 F.3d 197, 222 (3d Cir. 2005).

burden of proof on a motion to reopen is on the alien to establish eligibility for the requested relief." *Pllumi*, 642 F.3d at 161 (citation omitted).

Sheikh first contends that the BIA abused its discretion because it was irrational to base its ruling on the conclusion that Sheikh had not submitted evidence showing country conditions as they existed at the time of the merits hearing. Sheikh points to the State Department's Somalia Country Report on Human Rights Practices for 2010, claiming that he submitted it with his motion to reopen and that the BIA did not consider that report because it described conditions in 2010 rather than conditions in 2011 when the merits hearing occurred. Neither contention is supported by the record.

First, Sheikh submitted the 2010 State Department Report with his appeal to the BIA, not with his motion to reopen, which was properly before the IJ in the first instance, *see* 8 C.F.R. § 1003.23(b)(1). Second, we do not read the BIA's decision as faulting him for the year of the report that he submitted with his appeal. Instead, the BIA repeatedly took issue with Sheikh's failure to submit evidence to the IJ to establish earlier baseline conditions as a predicate to showing changed country conditions. The BIA did not err in reviewing the IJ's decision based on the record that was then before the IJ. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (explaining that the BIA's review is generally limited to the record before the IJ, although the BIA can take administrative notice where appropriate); *see also Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 410 (5th Cir. 2010) (finding that the BIA could take administrative notice of transcripts, even if they first entered the record on appeal before the BIA and were not a part of the formal record). Furthermore, we

cannot say the BIA abused its discretion in concluding that Sheikh, who submitted no earlier State Department Report to the IJ, did not meet his burden to show a material change in country conditions when he failed to submit comparison evidence of earlier country conditions.[6] *See Moosa v. Holder*, 644 F.3d 380, 386 (7th Cir. 2011) (finding the BIA did not abuse its discretion in rejecting petitioner's request to reopen, where petitioner presented "circumstantial," but "incomplete" evidence of changed country conditions).

Sheikh also contends that the BIA's conclusion that he did not show a change in country conditions is arbitrary because neither the BIA nor the IJ discussed all of the

---

[6] Sheikh maintains that the BIA could have taken administrative notice of the 2011 State Department Report, to which he cited in his motion to reopen. While the BIA may not be required to take notice of a State Department Report "independently," *see In re S-M-J-*, 21 I. & N. Dec. 722, 728, n.2 (BIA 1997), it is an open question whether citations to an earlier State Department Report should prompt the BIA to take administrative notice of the evidence in that report, *compare Liu v. Holder*, 718 F.3d 706, 710, 712 (7th Cir. 2013) (approvingly discussing a petitioner's inclusion of several years' worth of State Department Reports, but also noting that the petitioner did not need to include them, for "it was enough for her to cite them since they are public documents to which the Board has ready access"), *with Fisher v. INS*, 79 F.3d 955, 963 (9th Cir. 1996) (en banc) (concluding that where a petitioner never offered a State Department Country Report or "the facts contained in it" to the BIA, the BIA did not abuse its discretion in not taking administrative notice of it). Here, however, even if we were to assume that the BIA should have considered the evidence from the 2011 State Department Report in light of Sheikh's citation to it, the evidence he proffered fell short of showing a material change in country conditions. Instead, it established that both the TFG and the Federal Government of Somalia committed human rights abuses and detained persons, and that persons with disabilities faced discrimination under both regimes. Moreover, Sheikh also conceded that the 2011 State Department Report offered no evidence concerning earlier conditions for the internally displaced.

pertinent evidence. He points to his evidence of the mistreatment of Somalis with disabilities, the incursion of ISIS into Somalia, and the growth of Al-Shabaab and its allegiance to Al-Qaeda. The BIA must "meaningfully consider[] the evidence and arguments" presented to demonstrate a change in country conditions. *Fei Yan Zhu v. Att'y Gen.*, 744 F.3d 268, 272 (3d Cir. 2014). "This does not mean that [it] is required to expressly parse each point or discuss each piece of evidence presented, but it may not ignore evidence favorable to the alien" and "must provide an indication that it considered such evidence, and if the evidence is rejected, an explanation as to why it was rejected." *Id.* (citation omitted).

While neither the IJ nor the BIA delved into the details of Sheikh's claims, they did include sufficient detail to show that they reviewed the record and considered and analyzed the relevant arguments. *See Sevoian v. Ashcroft*, 290 F.3d 166, 178 (3d Cir. 2002) (noting that the BIA "is not required to write an exegesis on every contention") (citation omitted). The IJ considered the article entitled "2,000 miles from Syria, ISIS is trying to lure recruits in Somalia," which described ISIS's efforts to insert itself into Somalia and stated that a "trickle" or "a few dozen" Al-Shabaab fighters have switched their allegiance to ISIS. J.A. 5. The IJ also acknowledged the evidence about the Somali government persecuting and torturing members of minority clans and the "unsettling" evidence that persons with disabilities suffer disproportionately in Somalia. J.A. 5. The BIA, in affirming the IJ, accurately characterized Sheikh's claims related to changed country conditions, evaluated the documents submitted with the motion to reopen

9

carefully enough to find a reference to "Disability Rights in Somalia" within the evidence that Sheikh had submitted, and identified key missing evidence (about previous country conditions). The Board's analysis demonstrates that it sufficiently and meaningfully considered Sheikh's claims to sustain its rulings against a challenge of arbitrariness.

Finally, Sheikh maintains that the BIA and IJ erred by considering the document titled "Disability Rights in Somalia" without providing him an opportunity to respond. Sheikh is right. He should have been given a chance to respond when the IJ considered evidence outside of the record, and the IJ should have made it part of the record. *See Caushi v. Att'y Gen.*, 436 F.3d 220, 231 n.7 (3d Cir. 2006) (explaining that although an IJ may consider evidence of country conditions not initially in the record, if the IJ does so, he must make that evidence part of the record); *see also In re S-M-J-*, 21 I. & N. Dec. at 727-28. However, the BIA relied on an alternative basis for the ruling that Sheikh had not met his burden to warrant reopening—the absence of comparison evidence to show that the treatment of persons with disabilities had materially changed. For that reason, Sheikh was not "substantially prejudiced" by the consideration of the document, "Disability Rights in Somalia," and the error is harmless. *See McLeod v. INS*, 802 F.2d 89, 94 (3d Cir. 1986).

## III.    Conclusion

Because the BIA did not abuse its discretion in concluding that the motion to reopen was untimely and that Sheikh had not demonstrated a material change in country

conditions, we will deny the petition for review.[7]

---

[7] Sheikh also challenges the BIA's alternative ruling that, even if he established changed country conditions in relation to ISIS's influence in Somalia, he did not establish prima facie eligibility for asylum or withholding on the basis that he would be targeted by ISIS. Specifically, the BIA observed that, even acknowledging the characteristics that Sheikh argued would make him a more likely target (he is a moderate Muslim, a former United States Army contractor, a person with a disability, and a member of a minority clan that has been internally displaced), Sheikh presented evidence only that ISIS was "gaining strength" and "ha[d] obtained a foothold" in Somalia, which was insufficient to show a reasonable possibility that he, specifically, would be targeted, and therefore insufficient to show prima facie eligibility for asylum, withholding, or CAT relief. J.A. 11-12; *see also* J.A. 258 (article submitted by Sheikh with his motion to reopen, reflecting that "a trickle of [Al-Shabaab] fighters" have switched sides to ISIS). We perceive no legal error in the BIA's denial of his motion to reopen on this alternative ground.