NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————————

No. 18-1786

————————————

MARVIN ORLANDO HERNANDEZ-SILVAS,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,

Respondent

————————————

On Petition for Review from Reinstated Final Order of Removal
by U.S. Immigration and Customs Enforcement
(Agency No. A098-435-682)
Immigration Judge: John P. Ellington

————————————

Submitted Under Third Circuit L.A.R. 34.1(a)
January 8, 2019

Before: AMBRO, KRAUSE, and FUENTES, Circuit Judges

(Opinion filed: April 11, 2019)

————————————

OPINION[*]

————————————

FUENTES, Circuit Judge

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

In this petition for review from a reinstated Final Order of Removal, petitioner Marvin Orlando Hernandez-Silvas challenges the Immigration Judge's denial of his application for withholding of removal. Hernandez-Silvas contends that the Immigration Judge erred by not conducting a "full judicial review" of an Asylum Officer's determination that Hernandez-Silvas failed to establish a reasonable fear of persecution or torture in his country of origin, a prerequisite for withholding of removal. Hernandez-Silvas contends that the Immigration Judge's failure to conduct a full review of the Asylum Officer's reasonable fear determination violated both his regulatory and constitutional rights. Because we conclude there was no procedural error by the Immigration Judge or the Asylum Officer, we will deny Hernandez-Silvas's petition for review.

## I.     Background

Hernandez-Silvas, a native of Honduras, was first removed in 2005 for failure to have a valid, unexpired visa. He subsequently reentered the country on three separate occasions, and his 2005 Removal Order was reinstated in 2010 and 2012 pursuant to 8 U.S.C. § 1225(b)(1). Hernandez-Silvas reentered the country for the third time in 2017; shortly thereafter he was again detained, and the Department of Homeland Security again reinstated his 2005 Removal Order.

Upon his most recent detention, Hernandez-Silvas expressed a fear of returning to Honduras and, pursuant to 8 C.F.R. § 241.8(e), was referred to an Asylum Officer for a hearing to determine if there was "a reasonable possibility [Hernandez-Silvas] would be

2

persecuted or tortured" in his country of removal,[1] a process known as a "reasonable fear determination." During the hearing, Hernandez-Silvas testified that he feared to return to Honduras because he was a business owner, and the gang Batos Locos had demanded he pay a "monthly tax," which he refused to do.[2] According to Hernandez-Silvas, he was targeted because "they thought I had a lot of money."[3] When asked if he was afraid to return to Honduras "for any other reason," Hernandez-Silvas replied, "No."[4] The Asylum Officer concluded the hearing with a summary of Hernandez-Silvas's testimony, stating, "You believe you were targeted because you were a business owner and they perceived you as wealthy," which Hernandez-Silvas affirmed as accurate.[5]

The Asylum Officer concluded that Hernandez-Silvas had failed to establish a reasonable fear of persecution or torture because "Honduran business owners" were not a distinct social class entitled to withholding of removal.[6] Hernandez-Silvas appealed to the Immigration Court. There, he contended that the Asylum Officer failed to provide him an opportunity to explain that he was targeted on the basis of an "imputed political opinion" because of his father's mayoral campaign.[7] Based on a "very limited review" of the record before the Asylum Officer, the Immigration Judge rejected that argument

---

[1] A21.
[2] A34.
[3] A35.
[4] A36.
[5] A39.
[6] A26.
[7] A16.

because Hernandez-Silvas had failed to raise it before the Asylum Officer.[8]  Hernandez-Silvas then filed a petition for review in this Court.

## II.    Discussion[9]

Pursuant to the Immigration and Naturalization Act, individuals such as Hernandez-Silvas who have previously been removed are subject to a "streamlined" process to reinstate the prior order of removal.[10]  The Act provides that "[i]f the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . , the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed."[11]  Although the Act permits no reopening of the reinstated order of removal, it expressly provides an exception for withholding of removal for individuals with a "reasonable fear of persecution or torture" in their respective countries of removal.[12]

Consequently, if an individual expresses a fear of returning to the country designated in the reinstated removal order, he or she is referred to an Asylum Officer for

---

[8] A17.

[9] The Immigration Judge had jurisdiction to review the Asylum Officer's reasonable fear determination pursuant to 8 C.F.R. § 208.31; we have jurisdiction over Hernandez-Silvas's reinstated Final Order of Removal pursuant to 8 U.S.C. § 1252(a)(1), limited to constitutional claims and questions of law under 8 U.S.C. § 1252(a)(2)(C)-(D). *Bonilla v. Sessions*, 891 F.3d 87, 90 n.4 (3d Cir. 2018).  "We exercise plenary review over the IJ's conclusions of law, although the agency's interpretation of the Immigration and Nationality Act . . . and the regulations it has passed through the power granted to it under the [Act], are 'subject to established principles of deference.'" *Naul v. Ashcroft*, 106 F. App'x 791, 793-94 (3d Cir. 2004) (quoting *Coraggioso v. Ashcroft*, 355 F.3d 730, 733 (3d Cir. 2004)).

[10] *Bonilla*, 891 F.3d at 90.

[11] 8 U.S.C. § 1231(a)(5); *accord* 8 C.F.R. § 241.8(a).

[12] 8 C.F.R. § 241.8(e).

a "reasonable fear determination."[13] The determination is to be made in a nonadversarial proceeding, where the individual may be represented by counsel and may present evidence as to his or her fear of persecution or torture.[14] The Asylum Officer "shall create a written record of his or her determination," including a summary of relevant facts that he or she must review with the individual.[15] Any negative decision by the Asylum Officer is subject to "review" by an Immigration Judge; if the Immigration Judge concurs with the Asylum Officer, the case is returned to Citizenship and Immigration Services for removal.[16]

Regarding his reasonable fear determination, Hernandez-Silvas raises two arguments in his petition for review: first, that the Immigration Judge's refusal to fully review the Asylum Officer's reasonable fear determination violated procedural regulations; and, second, that that error violated his due process rights. For the reasons below, neither argument is availing.

### A. The Immigration Judge Did Not Violate Procedural Regulations

First, Hernandez-Silvas argues that the Immigration Judge violated Homeland Security's regulations by "not holding a full judicial review hearing of the negative reasonable fear findings of the Asylum Office[r]."[17] In particular, he contends that "[m]erely relying on the asylum officer's notes, findings and the transcripts negates the

---

[13] *Id.* § 208.31(b).
[14] *Id.* § 208.31(c).
[15] *Id.*
[16] *Id.* § 208.31(g).
[17] Pet. Br. at 9.

entire review process as provided" by the regulations.[18]  The Government responds that the relevant regulation "explicitly defines the respective jurisdictions of asylum officers and Immigration Judges," nowhere requiring the Immigration Judge to conduct a full review of the Asylum Officer's recommendation.[19]

The Government is correct with respect to this issue, because the Immigration Judge is granted "jurisdiction" only to conduct a limited "review" of the Asylum Officer's reasonable fear determination.  The regulations enact this limited jurisdiction through two separate provisions.

First, the regulations provide that the Asylum Officers have "exclusive jurisdiction to make reasonable fear determinations" and that the Immigration Judges have "exclusive jurisdiction to review such determinations."[20]  The assignment of limited jurisdiction to the Immigration Judge and the Asylum Officer "allow[s] for the fair and expeditious resolution of . . . claims [for withholding of removal] without unduly disrupting the streamlined removal processes applicable to these aliens."[21]

Second, the scope of the Immigration Judge's jurisdiction is limited by the regulations to review of the record before the Asylum Officer in arriving at a "negative decision."[22]  The Immigration Judge's review of a negative fear determination is to

---

[18] *Id.* at 20.
[19] Resp. Br. at 18.
[20] 8 C.F.R. § 208.31(a) ("USCIS has exclusive jurisdiction to make reasonable fear determinations, and EOIR has exclusive jurisdiction to review such determinations."). The United States Citizenship and Immigration Services ("USCIS") includes the Asylum Officers, *id.* § 208.9(a), and the Executive Office for Immigration Review ("EOIR") includes the Immigration Judges, *id.* 1003.9(a).
[21] 64 Fed. Reg. 8478, 8479.
[22] 8 C.F.R. § 208.31(g).

encompass "the asylum officer's notes, the summary of the material facts, and other materials upon which the determination was based."[23]  In contrast, if the Asylum Officer determines that the individual has a reasonable fear of persecution or torture, the Immigration Judge is to provide a "full consideration of the request for withholding of removal."[24]  Consequently, the regulations envision that the Immigration Judge's review of a "negative" reasonable fear determination is limited.  Further, the Immigration Court Practice Manual instructs that additional evidence may be introduced only "at the discretion of the Immigration Judge."[25]  That instruction is consistent with the regulations' intent in providing "streamlined" proceedings for reasonable fear determinations.[26]  Thus, the Immigration Judge did not err by relying only on the record before the Asylum Officer.

Hernandez-Silvas further argues that "full judicial review" by the Immigration Judge was necessitated by a number of errors committed by the Asylum Officer.  Specifically, Hernandez-Silvas contends that the Asylum Officer "did not let him explain

---

[23] *Id.*

[24] *Id.* § 208.31(e).

[25] Executive Office for Immigration Review, Department of Justice, Immigration Court Practice Manual, ch. 7.4(e)(iv)(E), *available at* https://www.justice.gov/eoir/office-chief-immigration-judge-0.  Although agency "interpretations contained in policy statements, agency manuals, and enforcement guidelines . . . lack the force of law [and] do not warrant *Chevron*-style deference," they are nonetheless "'entitled to respect' . . . to the extent that those interpretations have the 'power to persuade.'"  *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

[26] *Bonilla v. Sessions*, 891 F.3d 87, 90 (3d Cir. 2018); *Bartolome v. Sessions*, 904 F.3d 803, 807 (9th Cir. 2018) ("[R]easonable fear proceedings are to be streamlined, not intended to have full evidentiary hearings, because the alien continues to be subject to the expedited removal process used for previously removed aliens with reinstated orders of removal.").

7

and then failed to inquire further into" his claim that he was targeted because of his father's mayoral campaign.[27] He also claims that the "translator was continually cut off" and that the "asylum office[r] did not provide a full an[d] accurate summary of the transcripts."[28] The Government responds that "nothing in the record supports Hernandez-Silvas' claim."[29]

The Government is correct that nothing in the record supports a claim that the Asylum Officer or translator erred. Although we have held that a "decisionmaker must 'actually consider the evidence and argument that a party presents,'"[30] an agency is nonetheless "entitled to a presumption of regularity."[31] Consequently, Hernandez-Silvas bears the burden of showing irregularity by the Asylum Officer.[32]

He has failed to carry that burden. There is no evidence in the record that the Asylum Officer did not permit Hernandez-Silvas to explain his father's mayoral campaign, that the translator was cut off, or that the transcripts were inaccurate. Further, after Hernandez-Silvas testified that he had been targeted by Batos Locos because of his business, the Asylum Officer asked him, "Beside[s] what we have already discussed, are you afraid to return to your country for any other reason?"[33] Hernandez-Silvas replied,

---

[27] Pet. Br. at 18-19.

[28] *Id.* at 19.

[29] Resp. Br. at 16.

[30] *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001) (quoting *Llana-Castellon v. INS*, 16 F.3d 1093, 1096 (10th Cir. 1994)).

[31] *Id.* at 550 (quoting *McLeod v. INS*, 802 F.2d 89, 95 n.8 (3d Cir. 1986)).

[32] *Cf. id.* (quoting *McLeod*, 802 F.2d at 95 n.8) ("Abdulai bears the burden of proving that 'the BIA did not review the record when it considered the appeal.'").

[33] A36.

"No."[34]  The Asylum Officer also asked Hernandez-Silvas if he was targeted because of his political beliefs, which he denied.[35]  The Asylum Officer then summarized the hearing, stating, "You believe you were targeted because you were a business owner and they perceived you as wealthy," which Hernandez-Silvas affirmed as accurate.[36]

The record shows that Hernandez-Silvas had every opportunity to present his claim to the Asylum Officer.  There is no basis in the record to conclude that the reasonable fear proceedings before that Officer were marred by irregularities.

### B.  Hernandez-Silvas's Due Process Claim Is Meritless

Next, Hernandez-Silvas argues that the Immigration Judge's "failure to comply with the regulation governing [his] right to have the [Judge] properly review his negative reasonable fear determination" violated his due process rights.[37]  In response, the Government contends that, "because the agency did not fail to abide by the applicable regulations . . . it follows that Hernandez-Silvas'[s] due process claim is meritless."[38]  The Government is correct with respect to this issue.

Individuals in removal proceedings are guaranteed due process.[39]  In removal proceedings, the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."[40]  That fundamental requirement entitles an individual in removal proceedings to the right to "factfinding based on a

---

[34] *Id.*
[35] A37.
[36] A39.
[37] Pet. Br. at 21.
[38] Resp. Br. at 21.
[39] *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001).
[40] *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

record produced before the decisionmaker" and disclosed to the individual, the right to "make arguments on his or her own behalf," and the right to "an individualized determination" of his or her case.[41] "The failure of an agency to follow its own regulations is not, however, a per se denial of due process unless the regulation is required by the [C]onstitution or a statute."[42]

Hernandez-Silvas's due process argument fails for two reasons. First, he has failed to establish that either the Immigration Judge or the Asylum Officer violated any regulation, and second, he has failed to show that those regulations are required by statute or the Constitution. We thus reject Hernandez-Silvas's argument with respect to this issue.

## III. Conclusion

For the foregoing reasons, we will deny the petition for review.

---

[41] *Id.* (quoting *Llana-Castellon v. INS*, 16 F.3d 1093, 1096 (10th Cir. 1994) (internal citations omitted)).

[42] *Leslie v. Att'y Gen.*, 611 F.3d 171, 179 (3d Cir. 2010) (quoting *Arzanipour v. INS*, 866 F.2d 743, 746 (5th Cir. 1989)).